Azlee WHITLOCK, Jr., Plaintiff-Respondent,

v.

Lily WHITLOCK, Defendant-Appellant.

No. 31988.

St. Louis Court of Appeals.

Missouri.

Oct. 19, 1965.

Silas E. Garner, St. Louis, for defendant-appellant.

Vincent S. Moody, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This appeal, recently reassigned to the writer, is from an order overruling defendant's motion to set aside a decree of divorce granted plaintiff by default.

Plaintiff filed his petition in the Circuit Court of the City of St. Louis on December 19, 1963, alleging therein, among other matters, that three children were born of his union with defendant; that two others were born during the marriage, of which he was not the father; and that defendant was then pregnant with a third child of which he was not the father. Defendant was duly served with a summons and a copy of the petition on December 26, 1963, but did not file any responsive pleading or otherwise enter her appearance. On January 27, 1964, more than 30 days after service of process, defendant's default was noted, and the case was docketed for trial on February 12, 1964. Defendant did not appear on that day and after hearing plaintiff's evidence the court entered a judgment and decree granting plaintiff a divorce and custody of the three minor children he had stated were his.

On February 27, 1964, the defendant filed a verified motion captioned "Motion to Set Judgment and Decree Aside" in which she averred that she had a good and meritorious defense in that the charges made by plaintiff were false and untrue, and that "defendant failed to file an answer and defend the charges, only because she was told by the plaintiff that he was not going to prosecute the cause; that she trusted him and did not seek legal advice until she learned that plaintiff had not kept his promise to her disadvantage. * * *" Attached to her motion was an answer and cross-bill which defendant proposed to file upon the setting aside of the decree. A hearing on the motion was had on May 22, 1964, at which defendant testified that after she had been served with the summons and the copy of the petition the plaintiff visited her at her home regularly, told her she didn't have anything to worry about, that he was going to drop the divorce suit, and that if she had known he was going to prosecute the suit she would have hired a lawyer and come to court. She also stated that she had had all six children by plaintiff, and that she first learned that a decree of divorce had been granted plaintiff when she received a copy of the decree from the court on February 21, 1965. On cross-examination she admitted that she had received a letter from the domestic relations investigating department regarding the divorce suit; that she talked to the investigators about the case on February 5, 1964; and that her conference with that department was after plaintiff had told her he was not going ahead with the divorce action. She also admitted that she had read the allegations in the petition that two of the children did not belong to plaintiff and that she was pregnant with the third of which he was not the father; that she and her husband had been separated for several years; that plaintiff had been overseas in the Army; and that although plaintiff visited her sometimes two or three times a week they had had no marital relations while the divorce suit was pending.

Plaintiff then took the stand and testified that while the suit was pending he had seen defendant only once, about January 27, 1965, when he picked up the three children to take them to his aunt, who was visiting in St. Louis and wanted to see them. He denied that he had ever told defendant that he was going to drop the divorce suit, and stated that he had never discussed the action with defendant in any way.

Defendant was recalled, and again she stated that after the suit had been filed she had been seen plaintiff, "Regularly every week" at her house. Asked to fix the date when plaintiff had told her that he wasn't going to try the suit on February 12, she answered, "The 7th of January." She added that every time she saw him he told her he wasn't going to prosecute the case. Counsel for plaintiff asked to see a book which defendant had used to refresh her recollection, and asked what the entry on January 7 with $10 after it meant. Defendant replied that it was when plaintiff gave her that amount for support. Counsel then pointed out that the next entry was on February 21 and that those were the only two entries. Defendant answered that there was also an entry for "January two." When asked whether she wrote down in the book every time plaintiff came by, defendant replied, "Most of the time."

At the conclusion of the hearing on May 22, 1964, the court took the matter under submission, and on May 27, 1964, made and entered an order overruling defendant's motion to set aside the judgment and decree. On June 3, 1964, defendant filed her notice that she was appealing "* * * from the judgment overruling her motion to dismiss default judgment entered in this action on the 27th day of May, 1964."

The parties are far from agreement as to the nature and timeliness of defendant's motion. At one point in her brief (consisting of only two and one-half typewritten pages) defendant refers to her motion as a "* * * brand new lawsuit * * *"

and indicates that she considers it a petition for review under "The three year statute for review * * *," without citing the statute to which she refers; and at another place in her brief she terms her motion, "* * * a new lawsuit which serves the same purpose as the Writ of Coram-Nobis, which brings to the Court facts and material it did not have at the time of the Judgment. * * *" On the other hand, plaintiff contents himself with the assertion that the motion was not a motion for a new trial and that the court lost jurisdiction over the judgment after 30 days from its entry, but he does not attempt to state what the motion was.

Formerly there were two statutory provisions which authorized the vacating of a judgment upon motion made within three years, Sections 511.170 and 511.250, V.A.M.S. The former has been superseded by Civil Rule 74.12, V.A.M.R. and the latter by Rule 74.32, V.A.M.R. By her reference to the three year statute for review defendant can not have had in mind Civil Rule 74.32 for that rule concerns only a motion based upon an irregularity which is patent on the record, not one depending upon proof of facts dehors the record such as were pleaded in defendant's motion. Salle for Use and Benefit of Mandel v. Holland Furnace Co., Mo., 337 S.W.2d 87; Edson v. Fahy, Mo., 330 S.W.2d 854; Carr v. Carr, Mo., 253 S.W.2d 191. Presumably the statute to which defendant alluded in her brief was Section 511.170, V.A.M.S., superseded by Rule 74.12. But what the defendant overlooks, however, is that the instant judgment was one for divorce and Civil Rule 88.07 (which superseded Section 452.110) expressly provides that, "No petition for the review of any judgment for divorce shall be allowed, * * *." State ex rel. Conant v. Trimble, 311 Mo. 128, 277 S.W. 916; Kern v. Kern, Mo.App., 141 S.W.2d 164; Smoot v. Smoot, 227 Mo.App. 1246, 61 S.W.2d 373. Hence if the motion was a petition for review under Rule 74.12, as defendant seems to contend, it could not be allowed. Neither was the motion one in

the nature of an application for a writ of error coram-nobis, as defendant also suggests, for it lacks the requisites set forth in Jeude v. Sims, 258 Mo. 26, 166 S.W. 1048; Badger Lumber Co. v. Goodrich, 353 Mo. 769, 184 S.W. 435; and State v. Campbell, Mo., 307 S.W.2d 486. Nor was it, to continue the process of elimination, a direct attack in the same cause upon the jurisdiction of the court ab initio to render the particular judgment in the particular case, as in State ex rel. Coonley v. Hall, 296 Mo. 201, 246 S.W. 35 and Wenzel v. Wenzel, Mo.App., 283 S.W.2d 882; nor a bill in equity to set aside the judgment for fraud on the court in its procurement. State ex rel. Conant v. Trimble, supra; Wenzel v. Wenzel, supra.

If defendant's motion did not fall into any of the foregoing categories, then what was it? Despite its caption, and plaintiff's argument to the contrary, we are of the opinion that it was a motion for a new trial. It was filed on the fifteenth day after the entry of the judgment, and therefore within the time specified in Civil Rule 78.02. And it was based on one of the grounds on which a court is expressly authorized to grant a new trial. Civil Rule 78.01 provides, in part, that the court may award a new trial where it is shown that there was, "* * * a fraud or deceit practiced by one party on the other * *." If it was true, as defendant alleged in her motion, that she was prevented from appearing and presenting her defense because plaintiff told her he was not going to prosecute the action and would dismiss the case, then she was the innocent victim of a palpable fraud, and the court was authorized to set aside the judgment and grant her a new trial. Smith v. Smith, 164 Mo.App. 53, 148 S.W. 115; Barnes v. Childers, Mo. App., 246 S.W. 342. And since the motion for a new trial was timely filed, the court was not limited to 30 days from the entry of the judgment within which to act, as plaintiff contends, for the judgment did not become final until the motion was disposed of, or if not passed on within 90

days from the date it was filed, then after that period of time had elapsed. Civil Rules 78.02, 78.04.

■ Since the defendant's motion was based on facts dehors the record it did not, of course, prove itself and the burden rested upon defendant to show the court by convincing proof that plaintiff had practiced fraud and deceit upon her. McMahon v. May Department Stores Co., Mo., 374 S. W.2d 82. Defendant insisted that plaintiff had told her he was not going to prosecute the action and would dismiss it. With equal vehemence, plaintiff denied that he had ever made such representations to defendant. Thus there was an irreconcilable conflict in the oral testimony which the trial court resolved in favor of the plaintiff. Ordinarily, under that state of the record in a non-jury case, an appellate court defers to the trial court's finding since it is in a much better position to judge as to the credibility of the witnesses. McMahon v. May Department Stores Co., supra; Mueller v. Mueller, Mo., 318 S.W.2d 365. We perceive no reason, nor has one been suggested, why we should not do so in this case.

■ The court did not specify in its order the grounds upon which it overruled defendant's motion. Defendant assumes that the court denied her motion on the erroneous belief that it had lost jurisdiction of the case and that the judgment had become final because more than 30 days had elapsed since the judgment was entered. There is no basis in the court's order for such an assumption, and we cannot speculate or presume that it erred. Hardy v. McNary, Mo., 351 S.W.2d 17; Arnold v. Fisher, Mo.App., 359 S.W.2d 602. On the contrary, the presumption indulged in by an appellate court is that the trial court's action from which the appeal was taken was correct, and defendant as the appellant has the burden of affirmatively establishing that the court erred. Morris v. Willis, Mo., 338 S.W.2d 777; Hardy v. McNary, supra. She has failed to sustain that burden.

The judgment should therefore be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, P. J., RUDDY, J., and ROY W. McGHEE, Special Judge, concur.