Nadine GODSY, Appellant-Respondent,

v.

Sherman M. GODSY, Jr., Respondent-Appellant.

Nos. KCD 28689, KCD 28804 and KCD 28805.

Missouri Court of Appeals, Kansas City District.

April 3, 1978.

Motion for Rehearing and/or Transfer Denied May 1, 1978.

Application to Transfer Denied June 15, 1978.

Thaine Q. Blumer, Kansas City, for appellant-respondent, Nadine Godsy.

James R. Wyrsch, Ronald R. Holliger, Kansas City, for respondent-appellant, Sherman M. Godsy, Jr.

Before SOMERVILLE, P. J., TURNAGE, J., and DONALD L. MASON, Special Judge.

DONALD L. MASON, Special Judge.

The issues raised on these cross appeals necessitate a detailed recitation of the chronology of events and evidence which bring these antagonists, who were once fond enough of each other to get married and conceive one child, to this Court. The parties will sometimes be referred to in the roles they occupied in the trial court. Our review is as promulgated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The parties were married on May 1, 1964, from which union a male child was born in 1966. On July 7, 1971, Nadine Godsy filed a petition for divorce alleging the necessary elements to obtain that relief under the statutes then in force. On July 14, 1972, Sherman M. Godsy, Jr., filed his First Amended Answer and Cross-Petition, with leave of court, likewise alleging the necessary elements which would entitle him to the divorce, if proven. In December, 1972, the parties and the trial judge agreed to a special setting on February 15, 1973, to try the case on the merits. Six to eight continuances had previously been requested and granted. After obtaining the special setting the parties, through their attorneys, continued to negotiate a property settlement agreement, which negotiations were fruitless, mainly because defendant refused to sign an agreement which contained his previously accepted terms.

On January 23, 1973, defendant's then counsel wrote the docket clerk that it appeared the case would be resolved without trial and to remove the case from the trial docket for February 15th. On January 29, 1973, plaintiff's then counsel directed a letter to the trial judge, with a copy to the docket clerk, disputing the assertions of his opponent and requesting that the matter be retained on the trial docket. Under date of February 5, 1973, but not mailed until February 7th, and received by plaintiff's counsel on February 8th, defendant's attorney advised that he would not be able to try the case on February 15th as he and his family were leaving on February 10th for a ten day vacation to Hawaii and suggested the trial be postponed to the end of the month. Plaintiff's attorney responded by return mail, and personally, that he would not agree to a continuance and that he and his client would appear on trial date prepared

for trial. He also verbally apprised the partner of defendant's counsel of his intentions. Defense counsel, or his partner, advised defendant that he need not appear for trial as the case was going to be continued.

Plaintiff and her counsel appeared as scheduled. Neither defendant nor his retained counsel appeared. An office associate of defendant's counsel appeared and orally moved for a continuance. Judge Clymer, after noting the many continuances and the special setting, denied the continuance and the case was heard as a non-contested matter. Judgment was entered granting plaintiff the divorce, custody of the minor child and alimony in gross of $100,000.00. In addition plaintiff received a judgment of $4,320.00 for attorney fees for her first attorney and $5,932.00 for her trial attorney. The alimony and child support judgment was based upon testimony heard by the Court that the parties owned real estate valued at $500,000.00 upon which they lived and operated three pay fishing lakes. The fishing lakes provided annual taxable income of some $45,000.00. In addition the parties owned personal property in excess of $100,000.00 value. The attorney fee awards were also supported by the necessary and competent evidence.

On February 28, 1973, defendant timely filed his motion for new trial, which was subsequently overruled. He thereafter filed his notice of appeal to this Court, but the appeal was dismissed as not being timely filed (reported at 521 S.W.2d 449). Thereafter, certiorari was denied by the United States Supreme Court at 423 U.S. 887, 96 S.Ct. 181, 46 L.Ed.2d 119.

By this time both parties had changed legal counsel to their present attorneys. On August 5, 1975, defendant caused to be filed in the divorce case (No. 749,413) a pleading denominated as a Motion to Set Aside Judgment (hereafter "Motion"). The next day Mr. Godsy, as plaintiff, filed a pleading entitled Petition to Set Aside Judgment and for an Injunction (hereafter "Petition") (Case No. DR75–4195). The Motion and the Petition are almost identical in context and content. We will summarize, and at times paraphrase, the allegations contained in each pleading.

In the Motion defendant pleaded (1) the Motion was pursuant to Rules 74.32 and 74.78, in the nature of coram nobis, and that the judgment should be set aside for fraud; (2) the entry of default judgment on February 15, 1973; (3) the filing of the Motion within three years; (4) that Rule 74.32 permits setting aside judgments within three years; (5) that the judgment was secured as a result of a misapplication of, and failure to follow, established rules of procedure; (6) that the clerk of the court had published a docket advising defendant's counsel that the case was on a motion to modify docket and that a motion for additional temporary alimony and child support was then pending, which plaintiff's counsel advised was going to be heard; (7) no notice of entry of order and judgment as provided by Rule 74.78; (8) that the judgment entry and transcript shows no notice was given to defendant or his counsel; (9) that the court exceeded its jurisdiction in entering default judgment with the motions for temporary monies and to strike defendant's pleadings being on file and not ruled; (10) defendant's due process rights under both the United States and Missouri Constitutions were violated by lack of adequate notice; (11) lack of competent and adequate evidence to permit entry of judgment and error in denying defendant's request for a continuance; (12) that evidence outside the record was available to support setting aside the default judgment; (13) that fraud was perpetrated upon defendant and his counsel by plaintiff's counsel agreeing to a continuance and that the case was settled and no hearing was necessary, and that only motions to modify would be heard; (14) that defendant was not represented at the hearing by his attorney in violation of the 6th and 14th Amendments of the United States Constitution and Article I, Section 10, and Article I, Section 14, of the Missouri Constitution; (15) that defendant was told by his counsel not to appear and was thereby free of personal fault and negligence; (16) defendant's counsel did not properly represent him which constituted a fraud in

procurement of the judgment; (17) that the judgment was procured as the result of unavoidable accident or excusable mistake of defendant who did not appear because of advice of counsel, which counsel was inattentive, inadequately prepared and gave bad advice; (18) defendant had no adequate remedy at law; and (19) that defendant had a meritorious defense based on the marital misconduct of plaintiff (which was definitively pleaded).

█ The Petition alleged the same grounds and, additionally, asserted that Mrs. Godsy had caused various attachments, levies and executions to issue against the real estate owned by the parties in order to collect the judgments rendered in her favor in the divorce case. In this case plaintiff (Mr. Godsy) prayed that the default judgment be set aside and that defendant (Mrs. Godsy) be enjoined from further judgment collection efforts. Defendant did not file an answer to this petition until March 27, 1976, after hearing, judgment and filing of notice of appeal. She appeared at the hearing on the Motion and Petition and offered evidence, without objection. In this posture the failure to file responsive pleadings is deemed waived. *Gregg v. Johnston*, 546 S.W.2d 754 (Mo.App.1977).

The Motion and Petition were consolidated for hearing in the trial court, and the hearing was commenced on September 12, 1975, but not completed. The evidentiary hearing was completed January 19, 1976, and taken under advisement. On February 13, 1976, Judge Clymer entered his order sustaining the Motion to Set Aside Judgment (as filed in Case No. 749,413). It is from this order that Mrs. Godsy appeals in Case No. KCD–28689.

On April 5, 1976, the parties filed a stipulation that the trial court could consider all the evidence heard in both cases in ruling on the Petition to Set Aside Judgment, in ruling on the Motion for Attorney Fees Pendente Lite, filed on March 2, 1976, and the Motion for the Appointment of a Receiver, filed also on March 2, 1976. On April 5, 1976, an order was entered awarding attorney fees of $4,320.00, plus 6% interest from February 15, 1973, for services performed by plaintiff's first attorney; $5,932.00, plus 6% interest from February 15, 1973, for services performed by plaintiff's second attorney; and $4,000.00 for services performed by plaintiff's present attorney. On the same date the Court appointed a Receiver for the marital property and business, but that Receiver never qualified or served. It is from these orders that Mr. Godsy appeals in Case No. KCD–28804. Also, on the same date the Court entered an order sustaining the Petition to Set Aside Judgment (as filed in Case No. DR75–4195). No injunctive relief was ordered. It is from this order that Mrs. Godsy appeals in Case No. KCD–28805. No findings of facts and conclusions of law were requested or filed in support of the various judgments appealed from. These appeals have been consolidated. With this background and the delineation of the present status of the parties we will discuss the evidence presented at the hearing on the Motion and the Petition as is necessary to rule on the issues presented in these cross-appeals.

Evidence was adduced as to the pretrial activities of the respective counsel and the reason why defendant and his counsel did not appear for the scheduled hearing, as above enunciated. Mr. Godsy testified as to the pre-marriage acquisition of a portion of the real estate and the post-marriage acquisition of the remainder and the conveying of title to all of the real estate to him and his wife as tenants by the entirety. No evidence was presented to overcome the presumption of gift. He opined the value of the real estate and improvements to be no more than $115,000.00 and offered an expert witness who testified to the same effect. He also denied that the fishing lakes, and his hauling of fish during the winter months, produced annual taxable income as testified to by Mrs. Godsy in the divorce proceeding. Taxable income declared on the 1971, 1972 and 1973 individual returns filed by Mr. Godsy supports his testimony. He also testified that the allegations pleaded that his wife was not the innocent and injured party were true. Na-

dine Godsy, called as a witness by Sherman Godsy, reiterated her opinions as to property values and income in conformance with her testimony at the divorce hearing. She also offered a witness who testified that in September, 1973, he had several corporate clients, each of whom were willing to pay the Godsys $600,000.00 for the real estate (70 plus acres), and communicated that to Mrs. Godsy and the attorneys for the respective parties. The parties also stipulated that the reasonable charges for legal services performed by Mr. Blumer in representing Mrs. Godsy on the earlier appeal and in the United States Supreme Court was $2,625.00 plus an expense of $230.00 for the printing of the briefs. The testimony also developed that Mrs. Godsy was unemployed and without funds. This is a summarization of the lengthy evidentiary hearing, but fairly and adequately condenses the evidence adduced, and is the essence of that evidence.

█ We will first consider the ruling of the trial court on the Motion, excluding from that consideration for the present time those allegations which seek to invoke equity jurisdiction. It must be remembered that the Motion was filed on August 5, 1975, almost two and a half years after the entry of judgment and almost two years after the judgment became final. With certain exceptions, which we will hereafter discuss, a final judgment is beyond the reach of the trial court to alter or vacate, Rule 81.05, V.A.M.R.; *Hughes v. St. Louis National League Baseball Club, Inc.*, 359 Mo. 993, 224 S.W.2d 989 (Mo. banc 1949); *Highland Gardens Nursery, Inc. v. North American Developers, Inc.*, 494 S.W.2d 321 (Mo.1973); *Perryman v. Perryman*, 507 S.W.2d 671 (Mo.App.1974). The allegations in the Motion that might be perceived as asserting a meritorious defense or excusable neglect, which factors are considered in that class of cases exemplified by *Stieferman v. Stieferman*, 219 S.W.2d 864 (Mo. App.1949); *Hinson v. Hinson*, 518 S.W.2d 330 (Mo.App.1975); and *Krieber v. Krieber*, 420 S.W.2d 376 (Mo.App.1967), are not pertinent or controlling here because, as stated, the judgment of February 15, 1973, was a

final judgment when the Motion was filed in August, 1975, and the trial court was without jurisdiction to alter or vacate that judgment, *Wiseman v. Lehmann*, 464 S.W.2d 539 (Mo.App.1971); *Bradley v. Bradley*, 295 S.W.2d 592 (Mo.App.1956); *Godsy v. Godsy*, supra.

█ Further consideration requires that we note that the Motion may be treated "as a proceeding in equity constituting an attack upon a divorce decree which the court below had equity jurisdiction to consider," *S_____ v. S_____*, 490 S.W.2d 344 (Mo.App.1973). We will, therefore, consider both the Motion and Petition in the context of invoking equity jurisdiction. We will view both pleadings from the five directions urged by the respondent, Sherman Godsy, who relies heavily on the case of *Diekmann v. Associates Discount Corporation*, 410 S.W.2d 695 (Mo.App.1966). In that case it is stated, "[o]ur procedural arsenal holds six weapons designed to bring down a final default judgment: [1] a separate suit in equity, [2] a statutory petition for review, [3] a nunc pro tunc order, [4] a motion in the nature of a writ of error coram nobis, [5] a motion showing fraud practiced on the court, and [6] a motion showing irregularity on the face of the record," supra, at page 700. Respondent concedes a nunc pro tunc order was not the relief requested. We will identify these "weapons" as we discuss them.

█ Number six is within the scope of Rule 74.32, Missouri Rules of Civil Procedure. Mr. Godsy's conception of the breadth of that rule is erroneous. That rule permits a judgment to be set aside for irregularity on the face of the record, but does not permit the introduction of extraneous evidence to invalidate an otherwise valid judgment, *Dewey v. Dewey*, 544 S.W.2d 857 (Mo.App.1976); *Whitlock v. Whitlock*, 395 S.W.2d 468 (Mo.App.1965). There is absolutely no showing that the judgment of February 15, 1973, was irregular on its face. Therefore, the setting aside of that final judgment cannot be sustained on that ground.

Respondent, Sherman Godsy, also asserts that both pleadings are in the nature of a motion of writ of error coram nobis (number four above). This type of proceeding is predicated upon errors of fact, which facts if correctly known would have prevented the rendition of the judgment, *Zahorsky v. Zahorsky*, 543 S.W.2d 258 (Mo. App.1976). A motion for writ of error coram nobis is not intended to authorize any court to review or revise its decrees, *Pike v. Pike*, 239 Mo.App. 655, 193 S.W.2d 637 (1946). All of the evidence adduced only tends to prove that the trial court *may* have rendered a different judgment had both parties testified during the divorce proceedings. There is absolutely no showing that Mr. Godsy acquired knowledge of facts, after February 15, 1973, that would have *prevented* the rendition of some judgment on that date. Under the facts here pleaded and adduced, that remedy is not available, *Dewey v. Dewey*, supra, and the reversal of the judgment cannot be sustained on that ground.

In both pleadings Mr. Godsy asserts the filing of those pleadings within three years and also asserts that Rule 74.32 permits the setting aside of judgments within that time span. We have already discussed, and ruled, the scope of that rule. We conceive this allegation to be in the nature of a Petition for Review (number two above). Although not brought to our attention by the parties, or to the attention of the trial court, Section 452.110, RSMo., not repealed by the enactment of the Dissolution of Marriage Act, Laws of 1973, Sections 452.300 to 452.415, inclusive, provides, in part, "[N]o petition for review of any judgment for divorce, rendered in any case arising under this chapter, shall be allowed, any law or statute to the contrary notwithstanding." This statute has long been in effect in this State and is fixed public policy, *Bernstein v. Bernstein*, 351 S.W.2d 46 (Mo.App.1961). Therefore, that "weapon" is not available in this case, *Whitlock v. Whitlock*, supra, and the reversal of the judgment cannot be sustained on that ground. There is an additional reason why a petition for review would not be permissible in this case, that being that Mr. Godsy was not in default within the meaning of Rule 74.045 and 74.12 V.A.M.R., he having been duly summoned and filing an answer.

In a proceeding in equity (number one above) the petitioner must plead and prove that the decree was procured by fraud (number five above) and that fraud must relate not to the propriety of the judgment itself but to the manner in which the judgment was obtained, *Bernstein v. Bernstein*, supra; *Reis v. LaPresto*, 324 S.W.2d 648 (Mo.1959); *McCarty v. McCarty*, 300 S.W.2d 394 (Mo.1957); *Hemphill v. Quigg*, 355 S.W.2d 57 (Mo.1962); *Hemphill v. Hemphill*, 316 S.W.2d 582 (Mo.1958); *F. v. F.*, 333 S.W.2d 320 (Mo.App.1960); *Jones v. Jones*, 254 S.W.2d 260 (Mo.App.1953); and *Cherry v. Wertheim*, 25 S.W.2d 118 (Mo.App.1930), relied on by respondent in his brief.

All of these cases expound the same general principles as enunciated in the often cited case of *Jones v. Jones*, supra, at page 261, as follows: "It is well established that equity has jurisdiction to grant relief against a judgment upon the ground of fraud in its procurement so long as the complaining party is able to show that he himself was free from fault, neglect, or inattention to his case. But for the fraud to have existed in the procurement of the judgment, it must have related, not to the propriety of the judgment itself, but to the manner in which the judgment was obtained. In other words, the fraud must have been extrinsic or collateral to the matters which either were or could have been presented and adjudicated in the original proceeding, and not merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered. In short, it is not the province of this feature of equitable jurisdiction to afford the losing party a retrial of matters either tried or concluded by the original proceeding, but instead relief is limited to those instances where the fraud was of such a character as to have forestalled an opportunity for the fair submis-

sion of the controversy. Of such is the situation where the losing party to an action had a meritorious defense to interpose, but was prevented, without fault on his own part, from setting up his defense by reason of the fraud, deceit or artifice of the successful party. In such an instance the fraud is to be regarded as having been perpetrated, not only upon the losing party, but upon the court as well, and if and when established constitutes a proper ground for equitable relief against the judgment."

As can be plainly discerned from the evidence which we have already delineated, there was no showing that the judgment was procured by fraud. The evidence adduced was, at best, only conflicting for resolution by the trier of the facts. Mr. Godsy's evidence as to property values and income could have been presented at the trial of the divorce case had he appeared. The same is true as to his pleaded charges of marital misconduct. The disparate property values and amounts of income as testified to by the witnesses is not proof of fraud and is not the kind of testimony that would justify vitiating the judgment, *Hupp v. Murphy Finance Co.*, 502 S.W.2d 345 (Mo. 1973). That testimony is extrinsic or collateral to the matters adjudicated and goes to the propriety of the judgment, not to the manner in which the judgment was obtained. *Jones v. Jones*, supra; *Reis v. LaPresto*, supra.

The reasons advanced for defendant and his counsel failing to appear at the scheduled trial setting likewise do not give rise to fraud in the procurement of the judgment. To reach that status the failure to appear must be as a direct result of the deceit and deception practiced by the prevailing party. *Jones v. Jones*, supra; *J. R. Watkins Company v. Hubbard*, 343 S.W.2d 189 (Mo.App.1961); *Bogdon v. Commerce Bank of Kansas City*, 537 S.W.2d 650 (Mo. App.1976); *Reis v. LaPresto*, supra. This evidence could not support the conclusion that defense counsel was deceived by his opponent. Evidence to the contrary has already been enunciated. In addition, there are transcript statements of plaintiff's counsel that he would have acceded to a request for a continuance by any other counsel, leading to the inescapable conclusion that both counsel were acting in the role of professional antagonists enhanced by personal animosity, and were not acting in concert. Prior to defense counsel's departure, his opponent verbally and in writing expressed his intention to seek an adjudication of the divorce action on the scheduled date. Defense counsel could not have been misled in any way so as to justify the setting aside of the judgment on the grounds of fraudulent procurement. *Head v. Ken Bender Buick Pontiac, Inc.*, 452 S.W.2d 596 (Mo.App.1970); *Falcon Enterprises, Inc. v. Precise Forms, Inc.*, 509 S.W.2d 170 (Mo.App.1974). This same evidence is inapposite to proof that defendant was "free from fault, neglect, or inattention to his case" which is a foundation requirement for setting aside the judgment. *Jones v. Jones*, supra.

Both pleadings also attacked the judgment on the ground that Mr. Godsy was not given notice of the entry of judgment in accordance with Rule 74.78. That rule provides that the "judgment shall be set aside for good cause shown upon written motion filed within six months from the entry of the order of judgment" should the clerk of the court fail to give notice of the entry of judgment to defendants who are not in default for failure to appear. Mr. Godsy cannot be granted relief by that rule as he failed to file a motion to set aside the judgment within six months. Further, no prejudice can be demonstrated by lack of such notice as Mr. Godsy had actual knowledge of the entry of judgment as he timely filed a Motion for New Trial. Had he chosen to do so, he could have filed his Motion at the same time. (It being unnecessary to do so, we specifically do not decide if Mr. Godsy was entitled to the notice required by that rule.)

As has been demonstrated, the trial court erred in sustaining the Motion and the Petition. The judgments appealed from in KCD–28689 and KCD–28805 are reversed and remanded with directions to

dismiss with prejudice the Motion filed on August 5, 1975, in Circuit Court Case No. 749,413 and to reinstate the judgment of February 15, 1973, and also to dismiss with prejudice the Petition filed in Circuit Court Case No. DR75–4195. That portion of the judgment for attorney fees in the amount of $4,320.00, plus 6% interest from February 15, 1973, and $5,932.00, plus 6% interest from February 15, 1973, awarded to Mrs. Godsy in the judgment of April 5, 1976 (KCD–28804), being duplicative of the judgment of February 15, 1973, is reversed. That portion of the judgment of April 5, 1976, appointing a Receiver to take charge of the real estate and property owned by the parties is reversed as being moot, the Receiver not having qualified or acted, and also as not being supported by the evidence, *Murphy v. Carron*, supra.

The attorney fee award in favor of Mrs. Godsy dated April 5, 1975, in the amount of $4,000.00 for services performed by her present counsel likewise is not supported by the evidence, *Murphy v. Carron*, supra. This being a proceeding in equity, we review the case upon both the law and the evidence and reach our own independent conclusions as to the proper judgment to be entered, *Murray v. Murray*, 538 S.W.2d 587 (Mo.App.1976); *In Re Marriage of Powers*, 527 S.W.2d 949 (Mo.App.1975). That judgment is reversed and remanded with directions to enter judgment in favor of Mrs. Godsy in the amount of $2,855.00 as of April 5, 1976.

We have studied the briefs and the transcript and are cognizant of and have considered each of the remaining points asserted by the parties. An explication of those points would not alter the disposition we have reached, nor be of precedential value. Rule 84.16(b).

Accordingly, the judgments appealed from are reversed and the cause remanded for the entry of judgments as directed.

All concur.