Al KRANZ d/b/a Kranz Construction Company, Plaintiff-Respondent,

v.

CENTROPOLIS CRUSHER, INC., Defendant,

and

Callaway Mining Co., Applicant for Intervention-Appellant.

No. WD 32040.

Missouri Court of Appeals, Western District.

Jan. 12, 1982.

Modified Feb. 16, 1982.

Rehearing Denied Feb. 17, 1982.

Jerome T. Wolf, Terry W. Schackmann, Spencer, Fane, Britt & Browne, Kansas City, for applicant for intervention-appellant.

Gordon R. Gaebler, Charles R. Svoboda, Kansas City, for plaintiff-respondent.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

On July 5, 1978, the trial court entered a default judgment in favor of Al Kranz d/b/a Kranz Construction Company ("Kranz") against Centropolis Crusher, Inc. ("Centropolis") for $5,225.47 as the reasonable value of work and material furnished plus $574.50 interest, and declaring an equitable lien in favor of Kranz against certain described real estate on which the work was constructed. On February 2, 1979, Callaway Mining Co. ("Callaway") moved to intervene as a matter of right under the provisions of Rule 52.12(a) and filed with that motion its proposed petition for review in which it stated its grounds for requesting that the judgment of July 5, 1978, be set aside. That motion was denied and the petition for review stricken on June 24, 1980, and a motion to reconsider that ruling was denied on August 1, 1980. From the denial of its motion to intervene, Callaway pursues this appeal.

The following facts appear from the tendered petition for review and the affidavit submitted by Callaway in support of that proposed petition. In 1976, Kranz constructed a commercial entranceway for Centropolis on property owned by Centropolis. Kranz claimed the sum of $5,225.47 as the reasonable value of the work done, but no payment was made by Centropolis. A mechanic's lien was filed by Kranz on January 17, 1977. Thereafter, on March 22, 1978, Kranz filed the present lawsuit seeking an "equitable lien." The same day that suit was filed, Kranz also filed a lis pendens, but only in the final minutes of the business day of the clerk's office, on March 22, 1978.

At the time that Kranz did the construction work here in issue, and of course long prior to the time that it filed the present suit, Kranz had already on file a petition to enforce a mechanic's lien on the same property to which it claims an equitable lien in this case. In the earlier mechanic's lien case, the defendants named in addition to Centropolis were Diversified Mortgage Investors ("DMI"), Continental Mortgage Investors ("CMI") and the trustees under the two deeds of trust which secured notes from Centropolis to DMI and CMI. Among other issues presented in the mechanic's lien case was the question of whether the Kranz mechanic's lien would take priority over the DMI and CMI deeds of trust.

On March 1, 1978, the successor trustee under the two deeds of trust gave notice to all parties in interest, including Kranz, that a foreclosure sale would be held on March 23, 1978. The sale was held as scheduled on March 23, the property was bid in by DMI and was by it resold to Callaway. Kranz and its attorneys were present at the foreclosure sale, but no actual notice was given by them at that time that Kranz had filed a lawsuit and a lis pendens affecting the property on the previous afternoon.

On March 22, 1978, the same day that this suit and the lis pendens were filed, Kranz also requested service of process upon Centropolis through its registered agent. A non est return was made on April 21, 1978. The service on which Kranz relies to support its judgment here was not made until

May 5, 1978, at which time a process server, at Kranz's direction, went to a business address at 2701 Manchester, Kansas City, Missouri, and delivered a summons to a person described in the return as "Jackie—Clerk."

The business premises at which the summons was so delivered had formerly been occupied by Centropolis. However, by the time of this purported service, Centropolis was completely out of business and had no employees, much less a managing officer, on those premises. This property had by that time been taken over by Callaway. It might be inferred that this was a fact known by Kranz.

At the time of the default here against Centropolis on July 5, 1978, there was no party defendant other than Centropolis and no actual notice of any kind had been given to Callaway or its predecessor in title, DMI. Although it might be inferred that Kranz knew or should have known that Centropolis was no longer conducting any operations at the time of the default hearing, nevertheless Kranz did nothing to prevent the trial judge from proceeding under the impression that Centropolis still owned the property on which an equitable lien was being declared and that good service had been obtained upon Centropolis.[1] When Callaway learned of the entry of that judgment, it proceeded with the present motion to intervene.

The intervention proceeding was transferred to Judge Martin, who denied Callaway's motion solely on the ground that he had no jurisdiction to grant it. Thus the order overruling the motion to intervene and striking the petition for review recites: "The motion of Callaway Mining Company to intervene herein which was filed February 2, 1979 is overruled because it was not timely filed and the Court does not now have jurisdiction to allow intervention. *City of Montgomery v. Newson,* 469 S.W.2d 54 [Mo.App.]; *Alamo Credit Corporation v. Smallwood,* 459 S.W.2d 731 [Mo.App.]." On hearing the motion for reconsideration, the trial court amplified that ruling as follows: "I might say that in my order overruling the motion to intervene and striking the petition for review, I did not consider the merits of the attack that Callaway is making upon the judgment, whether it be for a lack of proper service or whether it be lack of a cause of action, that is, equitable lien or anything like that. My order is directed purely and solely to the procedure that Callaway is undertaking in order to make that attack. And based upon the decisions that I've cited in there, in the *Montgomery v. Newson* case, indicates that once that judgment is final the Court loses jurisdiction and I'd have no authority whatsoever to allow intervention."

The rule referred to by the trial court does prevail in the ordinary situation. However, there are exceptions. As stated in *Hub State Bank v. Wyatt,* 589 S.W.2d 372 (Mo.App.1979), the court may not disturb its judgment after thirty days "other than as invested by statute or common law procedures." The statutory and common law procedures so referred to consist of an arsenal holding six weapons: (1) a separate

---

1. The transcript of the hearing before Judge Marsh on July 5, 1978, discloses the following colloquy:

"The Court: * * * The return of summons reflects that service was had on the defendant Centropolis Crusher Company, as it recites it on the return, May 8, 1978 at 2701 Manchester in Jackson County, Missouri, by delivering a copy of summons and of the petition on an individual named 'Jackie' Clerk ... Absent other information the Court has to assume that 'Jackie' was the person in charge of this defendant's office at the time of the service of process.

"[Kranz's counsel]: We had requested service of the person in charge of the office, I think the record should reflect.

"The Court: Well, what's requested and what's a fact may be two different things. I mention that only because absence of other evidence makes this assumption, may be subject to collateral attack...."

At another point the transcript shows:

"The Court: Does the plaintiff seek a lien against this particular individual's property?

"[Kranz's counsel]: Yes; uh-huh.

"The Court: And this is the—these three tracts compose the real estate upon which this work was performed?

"[Kranz's counsel]: That's correct."

suit in equity; (2) a statutory petition for review; (3) a nunc pro tunc order; (4) a motion in the nature of a writ of error coram nobis; (5) a motion showing fraud practiced on the court; and (6) a motion showing irregularity on the face of the record. *Godsy v. Godsy*, 565 S.W.2d 726, 732 (Mo.App.1978). If Callaway showed proper grounds for any of these procedural remedies, the trial court did have jurisdiction to grant the relief of setting aside the judgment.

 There is no need to go any further than the very first procedure mentioned in *Godsy*, namely the use of a separate suit in equity. The classic ground for that procedure is fraud in the procurement of the judgment. *Godsy* at page 733, and authorities there cited. Moreover, equity may give relief in this type of situation when a wrong has been done through accident or mistake as readily as when there has been fraud in the concoction or procurement of a judgment. *Boyer v. Church*, 573 S.W.2d 444, 447 (Mo.App.1978) and cases there cited. Callaway's allegations suffice at the very least to show accident and mistake which would warrant setting aside the default judgment.

The cases cited by the trial court are not contrary to the rules just stated. *City of Montgomery v. Newson* was an annexation case in which the resident seeking to intervene had been named in the original petition and in the first amended petition for annexation, but who had never been served and had not been named in the second amended petition. The other named defendants defended on behalf of the entire class, and judgment went against them on July 9, 1969. On August 6, 1969, the omitted resident sought to intervene and reopen the judgment. A hearing was not held until October, at which time the judge held that he no longer had jurisdiction because of the expiration of thirty days after the

rendition of judgment, and that ruling was affirmed on appeal. In *Newson*, there was no default judgment nor was there any other ground for exception to the general rule that the trial court lost jurisdiction thirty days after rendition of judgment. It is of particular interest that the Court of Appeals cited and discussed *State ex rel. Aubuchon v. Jones*, 389 S.W.2d 854 (Mo. App.1965) which held that an interlocutory default judgment was not "final" after thirty days so as to deprive the court of jurisdiction to grant intervention after the lapse of that length of time. The opinion in *Newson* also mentions as an exception to the thirty-day rule the reopening of a default judgment on petition for review under Rules 74.12 to 74.14.

*Alamo Credit Corporation v. Smallwood* is likewise distinguishable. That involved a default replevin judgment, with a senior mortgagee attempting to intervene ten months after judgment. The opinion in *Smallwood* held that the attempted intervention was not timely and that there was nothing any longer pending as to which an intervention would be proper. It will be noted that in *Smallwood* there was no claim of insufficient service of process nor was there any allegation of fraud, accident or mistake.

 The trial judge indicated that Callaway had a procedure through a separate suit in equity to attack the default judgment.[2] On this appeal, Kranz virtually concedes that Callaway should and does have some procedural route by which to be heard as to whether the default judgment of July 5, 1978, should be set aside. His brief in this court states: "Throughout its brief, Callaway Mining Company alludes to six procedures whereby the trial court may set aside a final judgment ... Although such common law and statutory procedures may be available for the setting aside of a

---

**2.** On the hearing for reconsideration, the trial judge stated:

"Of course, you have other alternatives, too, and that is to file separate suit to raise whatever grounds you might have to attack this judgment collaterally. That's something Callaway

will have to determine whether or not it's what they want to do, and it may be that they'll have to proceed with both the options of appeal and separate suit to reach the merits that you're seeking."

final judgment, it must be noted that Callaway Mining Company did not elect such remedies. Callaway did not proceed by separate suit in equity. ..." Our procedural law is not so technical as the trial court believed and as Kranz attempts to argue. It is well established that a motion to set aside a judgment may be treated as a proceeding in equity or the motion to vacate may operate as a substitute for a writ of error coram nobis. *Rubbelke v. Aebli*, 340 S.W.2d 747 (Mo.1960); *Godsy v. Godsy, supra; S__ v. S__*, 490 S.W.2d 344 (Mo.App. 1973).

Kranz argues that his filing of a lis pendens put Callaway on constructive notice of his claim and that this is reason for denying Callaway a right to intervene for the purpose of attacking the judgment. The only significance that the lis pendens could have by way of foreclosing the intervention would be if it had the effect of making the motion to intervene untimely. Under some circumstances, a lis pendens could no doubt afford such constructive notice as to require a claimant to intervene in the action before judgment. However, in the present case Callaway has alleged that Kranz purposely timed his filing of the lis pendens until the last moments of the business day on March 22, 1978, the day before the foreclosure sale was scheduled to be held, and that this timing was for the calculated purpose of preventing Callaway from discovering the lis pendens even though it exercised normal and customary prudence in having the courthouse records checked prior to the sale. Whether or not Callaway did exercise reasonable prudence in this regard and whether Kranz should be held to have engaged in a specie of fraudulent conduct, are factual matters as to which the trial court should take evidence and as to which it should make a factual determination in the first instance. This has not yet been done, and the issue is therefore not presently ripe for appellate review.

If the facts are as alleged by Callaway, it does have a right to have the default judgment of July 5, 1978, set aside. Of course the facts may not be as alleged, and Callaway has a heavy burden of proof when it seeks as here to intervene after final judgment has been rendered. *City of Bridgeton v. Norfolk & W. Ry. Co.*, 535 S.W.2d 99 (Mo. banc 1976). Nevertheless, Callaway should be given the opportunity to prove its allegations. The record here affirmatively shows that the trial court has not considered or ruled upon the factual aspects of this situation, but rather the ruling denying intervention was purely on the legal question as to jurisdiction.

Kranz has moved to consolidate this case with the mechanic's lien case which is now pending before this court as *Kranz v. Centropolis Crusher, Inc.*, et al., No. WD 32218. The two cases can be considered and disposed of more conveniently separately. Accordingly, the motion to consolidate is overruled.

The order denying intervention and striking the petition for review is reversed, and this cause is remanded for further proceedings.

All concur.