The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

James E. SAINT–VELTRI, Defendant–Appellant.

No. 94CA0873.

Colorado Court of Appeals, Div. I.

Feb. 8, 1996.

As Modified on Denial of Rehearing March 21, 1996.*

Certiorari Granted Sept. 9, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Russell I. Stone, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, James E. Saint–Veltri, appeals the judgment of conviction entered after a jury trial finding him guilty of one count of possession of a controlled substance (cocaine), one count of aggravated possession with intent to sell 28 grams or more of a controlled substance (cocaine), and one count of unlawfully distributing, manufacturing, dispensing, selling, or possessing a controlled substance (cocaine) as a second offender. Defendant appeals only the trial court's ruling denying his motion to suppress evidence obtained as the result of an allegedly unlawful investigative detention. We reverse and remand for a new trial.

On the afternoon of April 30, 1993, an experienced Denver narcotics detective was conducting surveillance of defendant's business office on Cherry Creek Drive North. The detective, who was approximately sixty or seventy yards away, saw a man park a car in the parking lot of defendant's office building. The man entered the building, remained inside for less than five minutes, came out, drove his car across the street, and parked so as to be able to see the front of defendant's office building.

About ten minutes later, defendant came out of his office building and drove his own car across the street, pulling alongside the other man's car so that the drivers' sides were aligned with the fronts of the cars pointed in opposite directions. The detective moved his own vehicle within thirty yards in order to have a better view of the two cars.

The two men talked for a short time and the other man then handed defendant a blue object. Defendant turned to the right side of his own vehicle and did something the detective could not observe. Defendant then turned back toward the other man and the two shook hands in a "cupped" manner.

Although the detective did not testify that he actually observed any item change hands in the handshake, he found significance in the cupped handshake because he had used it when conducting undercover drug sales, and because he had seen other drug sales made with a cupped handshake. The detective also

expressed his opinion that the two men were probably not conducting legitimate business because they chose to meet in public across the street from defendant's office, rather than in private.

After watching these events, the detective and another officer blocked the cars of the two men and ordered them to step out of their cars. As the men were complying, the detective saw a small clear plastic bag containing a white powdery substance on the front seat of the vehicle belonging to the man with whom defendant had been speaking. Both men were then arrested.

The record reflects that the detective had selected defendant's office for narcotics surveillance based on information received from confidential informants. After learning this, defendant filed a pretrial motion for disclosure of the confidential informants' names. The prosecution opposed defendant's motion, and, in resolution of that issue, the parties agreed that the names would not be disclosed, but that, also, the information received by the informants would not be used to justify the arrest. Rather, for purposes of determining the validity of defendant's detention and arrest, the trial court would be presented only with the evidence of the detective's personal observations.

In accordance with the parties' agreement, the trial court expressly excluded from consideration any information arising from the confidential informants. Nevertheless, it concluded that the facts observed by the officer gave the officer reasonable suspicion sufficient to justify an investigative detention of defendant.

■ Defendant contends the trial court erred in finding reasonable suspicion that justified an investigative stop. We agree.

Given the agreement that the trial court would not consider any evidence arising from the confidential informants, we are similarly required to look at an artificially constructed record. Based on that limited evidence, we conclude there was not a sufficient showing of reasonable suspicion to justify an investigatory detention of defendant.

■ An investigative detention implicates important liberty interests and is only justi-fied if it is based on a reasonable suspicion of criminal activity. *People v. Rahming,* 795 P.2d 1338 (Colo.1990).

■ The reasonable suspicion necessary for an investigative stop must be judged against an objective standard. *People v. Mascarenas,* 666 P.2d 101 (Colo.1983). Under that standard, a trial court must determine whether the totality of the circumstances provided the officers with a particularized and objective basis for suspecting that the individual stopped is, or has been, involved in criminal activity. *People v. Thomas,* 660 P.2d 1272 (Colo.1983).

■ Among the factors a trial court should consider in determining whether officers had a reasonable suspicion to stop a criminal suspect are the officer's objective observations and "consideration of the modes or pattern of operation of certain kinds of law breakers." *People v. Hazelhurst,* 662 P.2d 1081, 1084 (Colo.1983).

■ Thus, a "trained police officer is qualified to draw inferences and make deductions that might elude an untrained person. The officer's assessment must center on whether there is an articulable suspicion that a particular person is engaged in wrongdoing." *People v. Hazelhurst, supra,* 662 P.2d at 1084. However, an officer's undefinable hunch of criminal activity cannot constitute a reasonable suspicion, regardless of the fact that a later search may corroborate the accuracy of an experienced officer's "sixth sense."

The prosecution contends here that it was inherently suspicious for two men to emerge from the same office building at different times, to pull their cars alongside each other in public, to exchange an unidentifiable blue item, and then to shake hands in a cupped manner. We disagree and conclude that, absent the information received from the confidential informants, the detective had no reasonable basis for articulating how this otherwise neutral activity suggested either a narcotics sale or some other type of criminal behavior.

The interaction took place in a public area not associated with drug sales. The two men remained in their own cars and neither ap-

peared nervous or concerned whether others were present. And, under the limited evidence available for our consideration, there is no indication that either man was known to be involved in drug sales. *See People v. Greer*, 860 P.2d 528 (Colo.1993) (factors contributing to reasonable suspicion include area's reputation as locus of drug activity, attempt to shield conduct from view, and officer's knowledge that one of the observed parties is known drug user).

Nor did the detective's experience as a narcotics officer increase the reasonableness of his suspicion that this transaction involved drugs or other contraband. The detective did not describe the cupped handshake as furtive or unique to the drug trade. He merely stated that in the past he had exchanged cash and narcotics in a similar manner when working in an undercover capacity and had seen others do the same.

Further, the detective described the object originally exchanged as blue but did not state how this type of object was consistent with a narcotics sale, nor did he describe an attempt by either man to conceal the exchange. Finally, the detective could not see if anything was actually transferred by means of the cupped handshake. *Cf. People v. Ratcliff*, 778 P.2d 1371 (Colo.1989) (observation of a completed hand-to-hand exchange in which each party gave the other an item and received a different item in return was a factor contributing to officer's reasonable suspicion of an illegal drug sale where one party was a known drug user, both parties attempted to obscure the exchange from view, and location of transaction was an area with a history of high drug traffic).

We agree that, if the People had been willing to introduce the totality of the circumstances known to the detective, reasonable suspicion would have been established. Here, however, the People chose to protect their informants' identities and, by doing so, artificially limited the relevant facts to the detective's observations. These observations, when viewed alone, reveal only that an object was handed from one man to another through their car windows and that the two men then shook hands in an unusual manner—nothing more.

In summary, we conclude that, based on the limited record before us, the trial court erred in ruling the officers had reasonable suspicion justifying an investigative detention. Accordingly, the evidence resulting from that detention must be suppressed.

Given this conclusion, we need not consider the trial court's ruling that, upon observing the white powdery substance in the other man's vehicle, the officers also had probable cause to arrest defendant. *See People v. Thomas, supra* (lack of reasonable suspicion justifying stop invalidates development of probable cause based on information obtained during the unconstitutional detention).

The judgment is reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

CRISWELL, J., concurs.

METZGER, J., dissents.

Judge METZGER dissenting.

I agree with the majority's statement of the legal principles that guide our resolution of this matter. And I concur with that part of the opinion which determines that the detective's initial contact with defendant was an investigatory stop for purposes of the Fourth Amendment. However, because I believe the record supports the trial court's conclusion that the detective had reasonable suspicion of criminal activity when he approached and detained defendant, I respectfully dissent.

To determine whether the investigatory stop was in violation of the Fourth Amendment, we must look to the totality of the circumstances surrounding the police-citizen encounter. *People v. Sutherland*, 886 P.2d 681 (Colo.1994).

In this regard, the United States Supreme Court has held:

The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analy-

sis proceeds with various objective observation ... and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrong-doing....

*United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981).

Likewise, circumstances may arise in which a person's wholly lawful conduct might justify the reasonable suspicion that criminal activity was transpiring. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

Here, at the time of defendant's arrest, the detective was a 21–year veteran of the Denver Police Department. He had worked in the department's narcotics division for over 18 years. At the suppression hearing, he testified that in his work as a detective he had witnessed or been involved in numerous drug transactions and was familiar with the common modes or patterns of operation of those who buy and sell illegal drugs.

Around 4:40 p.m. on April 30, 1993, the detective witnessed a man park his car, get out, walk into a building, leave the building less than five minutes later, get back in his car, drive across the street, and park his car in a manner that permitted him to observe the building he had just exited.

The detective then saw defendant leave the building, get into his car, and drive across the street. Defendant positioned his car such that his driver's side door was parallel to the other man's. At the same time, the detective moved his car to a vantage point which permitted him to see the other man pass a small blue object to defendant. Defendant then turned to his right, did something in his vehicle, and turned back. The detective then observed the defendant and the other man shake hands with their hands "cupped as in an exchange." The detective testified that this was not a "normal handshake"; instead, it was a gesture commonly used to transfer money or drugs.

I acknowledge that a person's presence in an area known for drug sales is a factor that may be considered in support of reasonable suspicion. *See People v. Greer,* 860 P.2d 528 (Colo.1993); *see also People v. Ratcliff,* 778 P.2d 1371 (Colo.1989). Likewise, an officer may rely upon a suspect's nervous or unduly cautious behavior, among other factors, in determining whether there is reasonable suspicion that criminal activity is afoot. *See People v. Sutherland, supra.*

However, I disagree with the majority's implicit conclusion that the absence of such factors precludes a finding of reasonable suspicion under the facts presented. Moreover, I fear that the majority's reasoning will have the unfortunate and unintended effect of insulating from investigatory stops those who choose to buy and sell narcotics, in broad daylight, in areas not already affected by the scourge of the illicit drug market, so long as they behave calmly and exchange the drugs covertly.

Additionally, I believe that the majority misapplies the relevant law in discounting the detective's experience as a basis for his reasonable suspicion of defendant's activities. As the majority correctly states, a "trained police officer is qualified to draw inferences and make deductions that might elude an untrained person."

In making such inferences and deductions, an officer is held to a standard of probability, not certainty. *See United States v. Sokolow, supra.* Moreover, an officer need not elimi-

nate all non-criminal explanations for a form of conduct before intervening and detaining a suspect. *See United States v. Forero–Rincon,* 626 F.2d 218 (2d Cir.1980); *United States v. Holland,* 510 F.2d 453 (9th Cir. 1975); *United States v. Welker,* 689 F.2d 167 (10th Cir.1982).

Thus, I believe that, based solely upon observations of the activities of defendant and the other man, the detective had a reasonably articulable suspicion that defendant was engaged in criminal activity. Hence, I would conclude that he was justified in approaching and briefly detaining defendant and the other suspect in the parking lot.

Indeed, in this case:

> When viewed in isolation, the discrete acts of the defendant are not dispositive and could be rationalized as involving only 'suspicious behavior.' The defendant's actions, however, are not independent. When viewed in their entirety, the individual acts fit together like pieces of a puzzle, and provide a reasonable basis for concluding that a drug transaction has taken place.

*People v. Ratcliff, supra,* 778 P.2d at 1382 (Rovira, J., dissenting).

Additionally, because the cocaine was observed during the course of what I believe was a legitimate intrusion that was justified at its inception, and because of the obviously incriminating character of the evidence, it was properly seized under the "plain view" doctrine. *See People v. Lewis,* 659 P.2d 676 (Colo.1983).

I would therefore affirm the decision of the trial court denying defendant's motion to suppress.