The PEOPLE of the State of
Colorado, Petitioner,

v.

James E. SAINT–VELTRI, Respondent.

No. 96SC242.

Supreme Court of Colorado,
En Banc.

Sept. 15, 1997.

Rehearing Denied Oct. 20, 1997.

---

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari in *People v. Saint–Veltri*, 923 P.2d 337 (Colo.App.1996), to review the judgment of the court of appeals reversing the conviction of the respondent, James Saint–Veltri, for possession and aggravated possession of a controlled substance, and for unlawfully distributing, manufacturing, dispensing, selling, or possessing a controlled substance as a second-time offender. At a pre-trial motions hearing the parties agreed with the trial court that Saint–Veltri's motion to disclose the names of three confidential informants would be moot if the court found that there was probable cause for the arrest without considering the confidential information. The trial court subsequently denied the suppression motion, concluding that police observations, standing alone, gave the police reasonable suspicion to detain Saint–Veltri. The court further found that upon stopping Saint–Veltri, the police saw a white, powdery substance through the window of the BMW and had probable cause to arrest the defendant. At trial, it was revealed for the first time that the police officers used binoculars to observe Saint–Veltri, and that the officers' guns were drawn when they initially approached Saint–Veltri. After Saint–Veltri renewed the suppression motion at the close of the prosecution's case, the trial court refused to reconsider the motion. Saint–Veltri was later convicted of the charges against him, but the court of appeals

reversed the judgment of conviction, holding that the police observations, without more, did not establish reasonable suspicion. *Saint–Veltri*, 923 P.2d at 340.

We hold that an agreement between the parties which does not finally resolve a motion for disclosure, but leaves the issue subject to further consideration if a court concludes that the stop was made without reasonable suspicion, is not binding and is not an acceptable trial court procedure. This case must be remanded to the trial court for a new hearing to resolve Saint–Veltri's disclosure and suppression motions. Accordingly, we reverse the judgment of the court of appeals suppressing the evidence obtained as a result of Saint–Veltri's detention.

## I.

On Friday, April 30, 1993, Detective Steven Barnhill of the Denver Police Department received a tip from a confidential informant that Saint–Veltri would be "doing a lot of business" that day in the trafficking of cocaine from the location of his business, Wellness International. After receiving the tip, Barnhill and his partner, Detective Fitzgibbons, set up an undercover surveillance of Wellness International that afternoon. During the course of this surveillance, the detectives observed a man named Scott Hazzard park a gray BMW sedan at Saint–Veltri's place of business, enter, then emerge after less than five minutes. Barnhill testified that Hazzard drove his car approximately 60 to 70 yards east of Saint–Veltri's business, and parked "facing west as if he was watching the door" to Saint–Veltri's office building.

The detectives observed Saint–Veltri leave the office building approximately ten minutes later, get in his Oldsmobile, and drive to the location of the BMW. Saint–Veltri positioned his car so that its driver's side was aligned with the driver's side of the BMW. After the occupants of the automobiles conversed, Barnhill observed Hazzard hand a blue object to Saint–Veltri. Barnhill testified that Saint–Veltri then

turned to his right, did something in the vehicle, and then turned back and . . . the two gentlemen shook hands, but I was able to see their hands were cupped as in an exchange. And in my undercover dealings over the last 18 years I've done it on several occasions in transferring either money or drugs.

After observing the "cupped" handshake, Barnhill decided to contact Saint–Veltri and Hazzard. Barnhill, Fitzgibbons, and a third officer blocked the departure of the Oldsmobile and BMW with their own vehicles, and ordered Saint–Veltri and Hazzard out of their cars. Barnhill observed a clear plastic packet containing a white, powdery substance through the driver's side window of the BMW, and both Saint–Veltri and Hazzard were handcuffed and placed in police vehicles.

The prosecution filed a criminal information charging Saint–Veltri with four counts of unlawfully possessing and selling a controlled substance. Saint–Veltri filed a motion to suppress statements and evidence retrieved from the Oldsmobile, as well as a motion to disclose the identities of confidential informants who apprised Barnhill of Saint–Veltri's drug trafficking activities. In support of the latter motion, Saint–Veltri argued that disclosure was required because the reliability of confidential informants who provided information to Barnhill was "essential to the determination of whether there was probable cause to arrest."

At the pre-trial motions hearing, the court suggested and the parties agreed that, if the officers' encounter with Saint–Veltri was justified without considering the confidential information, the disclosure motion would be "moot." The parties and the court had the following exchange:

THE COURT: Okay. Well, then, maybe the way to back into this is for me to determine whether or not there was probable cause for the arrest absent the confidential informants' information.

[THE DEFENSE]: That's—

THE COURT: If I find there was probable cause for the arrest absent the infor-

mants' information then that would moot out your request for disclosure of the confidential informants; is that right?

[THE DEFENSE]: Unless my co-counsel has something to add, I would agree with that.

THE COURT: Okay. Well, let's then approach it from that direction.

[THE PEOPLE]: That's fine, Judge. I needed to understand. He said—

THE COURT: That seems to be a logical way.

The court did not consider the confidential information as part of its evaluation of whether the totality of the circumstances surrounding the encounter supported the detention of Saint–Veltri, and did not further consider the disclosure motion.

Detective Barnhill was the only witness who testified at the suppression hearing. Barnhill testified that, on prior occasions, three confidential informants had told him that Saint–Veltri was actively engaged in the trafficking of cocaine. Barnhill further testified that all of the informants identified Saint–Veltri's vehicle as "a white older Oldsmobile, '89, four-door," that two of the informants had said that Saint–Veltri sold drugs in various nightclubs in the Denver area, and that one of the informants said that Saint–Veltri also sold drugs from his business and utilized a beeper in order to set up meetings in other locations. At the conclusion of the hearing, the trial court determined that the detectives had reasonable suspicion to detain Saint–Veltri "without taking into account the information received from the [confidential informants]." The court further determined that, once Barnhill observed the packet containing the white powder in plain view, there was probable cause to arrest Saint–Veltri.

At Saint–Veltri's jury trial, Barnhill testified for the first time that, after he saw the blue object pass from Hazzard to Saint–Veltri, he used binoculars to view the cupped handshake. Barnhill also testified that the officers' guns were drawn when they initially approached the two cars. Saint–Veltri wait-

ed until the close of the prosecution's case to renew the suppression motion, arguing that the officers' use of guns elevated the confrontation to an arrest before Barnhill observed the contraband. In response to Saint–Veltri's request, the trial court stated, "Okay. You've completed your record on that point. Thank you."

At the conclusion of the trial, the jury found Saint–Veltri guilty of one count of possession of a schedule II controlled substance, cocaine,[1] one count of unlawful distribution, manufacturing, dispensing, sale and possession of cocaine,[2] and one count of aggravated possession with intent to sell 28 grams or more of cocaine.[3] The jury also found that Saint–Veltri had a prior conviction for distribution of a controlled substance, elevating that offense to a class 2 felony.[4] The trial court sentenced Saint–Veltri to 15 years imprisonment.

The court of appeals reversed the judgment of conviction and held that all evidence resulting from the investigative detention of Saint–Veltri must be suppressed. *See Saint–Veltri*, 923 P.2d at 340. The court determined that the parties had agreed at the motions hearing "that ... the information received by the informants would not be used to justify the arrest." *Id.* at 339. The court concluded that no reasonable suspicion justified Saint–Veltri's detention, without considering the information from the informants:

> Given the agreement that the trial court would not consider any evidence arising from the confidential informants, we are similarly required to look at an artificially constructed record. Based on that limited

evidence, we conclude there was not a sufficient showing of reasonable suspicion to justify an investigatory detention of defendant.

*Id.*

In dissent, Judge Metzger disagreed with the majority's conclusion that reasonable suspicion did not exist for the initial detention. Judge Metzger argued that Barnhill's observations, without the information from the informants, gave him "a reasonably articulable suspicion that defendant was engaged in criminal activity." *Id.* at 342 (Metzger, J., dissenting). We subsequently granted the prosecution's request for a writ of certiorari.

## II.

■ We decline to reach the issue for which we granted certiorari because that issue poses a hypothetical question whose answer would not necessarily decide the case.[5] As the court of appeals recognized, the trial court's analysis of the suppression motion expressly excluded any consideration of the information provided by the confidential informants which was known to officers when they initially stopped Saint–Veltri. *See Saint–Veltri*, 923 P.2d at 339. At the suppression hearing, the trial court and the parties agreed that Saint–Veltri's disclosure motion would be moot if the court found probable cause existed without considering the confidential information. The trial court then proposed that it would not consider the confidential information in assessing the existence of probable cause if probable cause existed without considering the contents of the information. By adopting such a procedure, the court avoided any consideration of

---

1. See § 18–18–405, 8B C.R.S. (1996 Supp.); § 18–18–204, 8B C.R.S. (1996 Supp.).

2. *See* § 18–18–405.

3. *See* § 18–18–105(3), 8B C.R.S. (1986).

4. *See* § 18–18–405(2)(a)(II), 8B C.R.S. (1996 Supp.).

5. We granted certiorari to consider: Whether reasonable suspicion for a stop existed where, in response to an informant's tip,

officers observed two men come out of a building, get into their cars, drive across the street, align their cars in such a way as to position each car's driver's side window right next to the other's, exchange a blue object, and then shake hands in an abnormal manner—i.e., a "cupped" handshake, which one officer with eighteen years' narcotic experience recognized as having been used in the trafficking of drugs.

the confidential information unless it was necessary to a finding of reasonable suspicion.

■ According to the court of appeals opinion, the agreement reached at the motions hearing was that "the information received by the informants would not be used to justify the arrest." *Id.* While such a stipulation could be properly made (essentially resolving the disclosure issue as if the information from the informants would not be used because the prosecution refused to comply with an order to disclose), we do not construe the agreement reached between the court and the parties so broadly. Our reading of the record indicates that the court and the parties only agreed not to use the confidential information if probable cause existed in its absence. Most importantly, the prosecution did not agree to refrain from introducing the contents of the information given by the three confidential informants if the court found that the police observations, standing alone, did not justify the stop and the subsequent arrest.[6]

If we affirmed the court of appeals holding that Barnhill's observations and experience constituted insufficient evidence of reasonable suspicion, nothing would prevent the prosecution from reopening the Fourth Amendment issue on remand and asking that the trial court consider whether the addition of the confidential information to the other facts previously considered by the court would change the result we reached. For this reason, the question of whether Barnhill had reasonable suspicion to detain Saint–Veltri based solely on his observations and experience is a hypothetical question—if it is answered in the negative, nothing prevents the prosecution from relitigating the issue with additional information. *See Tippett v. Johnson,* 742 P.2d 314, 315 (Colo.1987) ("This court is not empowered to give advisory opinions based on hypothetical fact situations.").

■ It is axiomatic that "[c]ourts exist for the purpose of deciding live disputes involving 'flesh-and-blood' legal problems with data 'relevant and adequate to informed judgment.'" *Denver v. Consolidated Ditches Co.,* 807 P.2d 23, 38 (Colo.1991) (quoting *People v. Lybarger,* 700 P.2d 910, 915 (Colo.1985)). When the answer to a legal question does not resolve the dispute at issue, "judicial pronouncements become nothing more than hypothetical rulings on matters extraneous to the real source of contention between the parties." *Lybarger,* 700 P.2d at 915. Because the trial court procedure created an unnecessary risk that appellate review would not resolve the actual dispute, we expressly disapprove of that procedure. *See People v. Campbell,* 196 Colo. 390, 391–92, 589 P.2d 1360, 1361 (1978). Once Saint–Veltri filed the motion to disclose the identities of the confidential informants, it was incumbent on the trial court to make a ruling as to whether disclosure was necessary. *See People v. McLean,* 661 P.2d 1157, 1160 (Colo.1983).

■ The trial court procedure precluded the court from considering all of the facts justifying reasonable suspicion known to

6. The court of appeals opinion suggested that the prosecution was unwilling to "introduce the totality of the circumstances known to [Barnhill]," and that the prosecution "chose to protect their informants' identities and, by doing so, artificially limited the relevant facts to [Barnhill's] observations." *Saint–Veltri,* 923 P.2d at 340. We note that, even when the prosecution chooses to protect the identities of its confidential informants, this choice does not preclude consideration of confidential information. Whether confidential information may be considered in deciding a motion to suppress is dependent on the reliability of the information, not the identity of the informant. Although disclosure may sometimes be necessary to determine the reliability of the information, the lack of disclosure does not necessarily prevent a court from finding that the information is reliable.

Our analysis of the suppression hearing record does not support the conclusion that the prosecution was unwilling to introduce the totality of the circumstances surrounding the encounter. The prosecution merely agreed that, if probable cause existed without consideration of the confidential information, it would be unnecessary for the court to consider that information in connection with the suppression motion. The prosecution did not agree to "limit the relevant facts" to Barnhill's observations if the confidential information was needed for a finding of probable cause.

Barnhill at the time he detained Saint–Veltri.[7] Clearly, both Barnhill's observations and the contents of the confidential information played a role in the resulting detention of Saint–Veltri. The trial court did not consider the confidential information as part of the totality of the circumstances surrounding the encounter to avoid first ruling on Saint–Veltri's disclosure motion. It is error for a trial court to unnecessarily adopt a procedure that results in a failure to examine the totality of the circumstances in the evidentiary record. *See People v. D.F.*, 933 P.2d 9, 16 (Colo.1997) (trial court erred when it failed to consider all of the circumstances in the record known to the police at the time they conducted investigatory detention). If the trial court had determined that the confidential information lacked sufficient indicia of reliability, it could have properly refused to regard such information as lending any support for the investigatory detention. *See Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990) (" 'Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized.' ") (quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972)). However, because of its agreement with the parties, the court elected not to consider the confidential information because it could obviate the need for deciding Saint–Veltri's disclosure motion. As a result, the trial court did not consider the reliability of the information.

Because the trial court did not consider whether the confidential information could be included in the Fourth Amendment analysis, its findings concerning the motion to suppress were incomplete. Accordingly, this case must be remanded to the trial court with directions that the court hold a new motions hearing. At that hearing, the court must decide the merits of the disclosure motion. In addition, the court must determine if the confidential information may be considered in evaluating whether Saint–Veltri's detention was justified by reasonable suspicion, and hear the motion to suppress in light of that determination.

### III.

 We hold that an agreement between the parties which does not finally resolve a motion for disclosure, but leaves the issue subject to further consideration if a court concludes that the stop was made without reasonable suspicion, is not binding and is not an acceptable trial court procedure. When a motion to disclose the names of confidential informants is timely filed before a suppression hearing, the trial court must resolve that motion. Accordingly, we reverse the judgment of the court of appeals suppressing the evidence resulting from Saint–Veltri's detention, and return the case to that court with directions to remand the case to the trial court. The trial court shall rule on the motion for disclosure and shall then address the motion to suppress. If the trial court rules against suppression after properly considering Saint–Veltri's disclosure and suppression motions, it shall reinstate the judgment of conviction.

7. For this reason, we cannot, as the prosecution argues, treat the confidential information "as if it came from anonymous sources whose credibility and veracity could not in any event be attacked." Anonymous information and confidential information are similar in the sense that both may be considered in conjunction with a motion to suppress, even when the identity of the informant is not revealed, if sufficient indicia of the reliability of the information, such as corroboration, exists. Conversely, a court may refuse to consider anonymous or confidential information as supportive of probable cause or reasonable suspicion if the record does not support its reliability.

Here, the trial court did not refuse to consider the confidential information based on explicit or implicit findings that the information bore no indicia of reliability. Instead, it crafted a procedure which circumvented a determination of whether the confidential information was reliable. Under these circumstances, if we were to make a determination of reliability based on our review of the record, we would usurp the role of the trial court. Therefore, we decline, at this stage of the proceedings, to consider the confidential information and decide the merits of the defendant's motion to suppress.