Lonnie Augusta MEADOWS *v.* STATE of Arkansas

CR 80-77                                          602 S.W. 2d 636
Supreme Court of Arkansas
Opinion delivered June 30, 1980
Rehearing denied August 25, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Ray Harten-stein*, Chief Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Jack W. Dickerson*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. In this prosecution for possession of heroin with intent to deliver, the issue on appeal is the validity of a police search by which Meadows was

found to be carrying drugs on his person. At a non-jury trial Meadows was found guilty and sentenced to ten years' imprisonment. We agree with his insistence that the trial court should have suppressed the evidence produced by the search.

On the evening of February 8, 1978, Meadows and a companion, Rosco Duncan, both black, arrived by plane at the Little Rock airport. Three state policemen, Don Sanders, Bill Bounds, and Dave Johnston, dressed in plain clothes, were watching the alighting passengers in the hope of spotting several white males who were reported to be transporting heroin. When Meadows and Duncan walked past the officers they started looking back, which aroused the officers' suspicion. Bounds motioned to Sanders to follow the two men. Sanders fell in behind them and followed them through the building at some distance. Both men kept looking back occasionally. Their pace quickened as they went through the terminal, where there were perhaps 150 people. After going down an escalator the two men went to a pay telephone booth.

At that point Sanders approached Meadows and identified himself as a policeman. Meadows said, "I knew you were a police officer." Sanders said he wondered if anything was wrong, and Meadows answered, "No." Sanders then asked for identification, and Meadows produced his driver's license. Sanders handed the license to Officer Bounds, who with Officer Johnston had arrived by then. Bounds telephoned the police communications center to check on the two men, but the computer terminal was "down." Bounds returned the driver's license to Meadows and told him he could go.

Within moments Bounds was called to the telephone and was told by the communications center that there was a felony warrant out for Meadows, for defrauding a secured creditor. The officers caught up with Meadows and Duncan as they were leaving the airport, arrested Meadows, and searched him, finding heroin which gave rise to this prosecution.

Officer Sanders testified that he did not follow Meadows

because he suspected him of any specific crime, but simply because Meadows and Duncan were looking back in a suspicious manner. Officer Bounds testified that the police call such conduct "rubber-necking," which indicates that the suspect has spotted a police officer and is nervous. The trial judge found that there was nothing at all illegal about what Meadows and Duncan were doing; "It's obvious to the court that we've got some paranoid cops." Nevertheless, the judge refused to suppress the evidence, on the ground that a police officer is permitted to stop anyone and ask him for identification. On that premise the judge held that the information obtained through Meadows' driver's license was not tainted under the poisonous tree doctrine, and the seized drugs were therefore admissible.

We disagree. The main issue is controlled by our Criminal Procedure Rule 3.1, which provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

The rule is meant to furnish police officers with a simple, certain, understandable guide for stopping and detaining suspects. We need not determine whether the rule is more restrictive than the principles to be distilled from various Supreme Court decisions, for of course there is no constitutional objection to a rule of law that provides more protection to individual liberty than the minimum required by the Constitution of the United States.

Here the officer's sole reason for approaching the two men was their conduct in looking back and in quickening their pace upon being followed. That conduct, however, could not possibly suggest that Meadows or Duncan had committed or were about to commit any *particular* type of

felony or misdemeanor, which is necessarily what Rule 3.1 refers to. In fact, ·Bounds testified that he suspected that Meadows had committed "crime," but he was unable to be more specific. We must conclude that in the circumstances the officers were not authorized by Rule 3.1 to stop the two men.

The State also argues that Officer Sanders's request for Meadows's identification was proper under Rule 2.2, which reads in part:

> (a) A law enforcement officer may request any person to furnish information or *otherwise* cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request. [Italics added.]

We have emphasized the word "otherwise," because the insertion of that word shows beyond question that the officer's request for information must be in aid of the investigation or prevention of crime. Here there is nothing in the officers' testimony to support a belief that Officer Sanders asked Meadows for identification in the course of a criminal investigation. According to the officers' own statements, their interrogation was of the kind contemplated by Rule 3.1 rather than by Rule 2.2.

It is also argued that Meadows consented to the interrogation by handing over his driver's license. We have held, however, that consent to an invasion of privacy must be proved by clear and positive testimony — a burden that is not met by showing only acquiescence to a claim of lawful authority. *Rodriquez* v. *State*, 262 Ark. 659, 559 S.W. 2d 925 (1978). Nothing more has been shown in this case.

To sum up, if the officers' conduct in this case is proper, then any law enforcement officer may stop a citizen at any time, without reasonable grounds for suspicion, request identification, and arrest and search the citizen if his identity uncovers an outstanding felony warrant. We need not sift through the Supreme Court's decisions to find that tribunal's

probable answer to the question presented by this case. Our own Rules of Criminal Procedure unmistakably require that the evidence seized in this case be suppressed.

Reversed.