769 So.2d 404 (2000)
Halley E. WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-4379.
District Court of Appeal of Florida, Second District.
August 30, 2000.
*405 James Marion Moorman, Public Defender, Bartow, and Clark E. Green, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Katherine Coombs Cline, Assistant Attorney General, Tampa, for Appellee.
DAVIS, Judge.
Williams challenges his conviction for possession of cocaine. He argues that the trial court erred in denying his motion to suppress and admitting the cocaine into evidence. We agree and reverse.
At about 11 p.m., on October 1, 1998, a St. Petersburg police officer was conducting surveillance of a location known for its high drug activity. On prior occasions, this officer and other officers had made arrests involving the sale of cocaine at this location. In the typical scenario that resulted in these arrests, a car would drive up to the apartment complex and stop somewhere near the entrance. One or more individuals from the complex would then approach the vehicle, lean inside, talk to the occupants, and walk away. Such an encounter normally took less than a minute. The arrests made following these encounters indicated that the individuals at the complex were selling cocaine to the occupants of the vehicles.
On the night in question, the officer sat in his cruiser 100 to 125 yards away from the apartment complex, using binoculars to watch the entrance. The officer observed Williams' maroon compact car suddenly stop in front of the complex and angle itself toward the entrance. Five people who were standing inside the complex ran up to the driver's side window waving their arms. One or more of them bent down nearly into the car. The officer saw no hand-to-hand exchange, no money, and no drugs. The entire encounter lasted 30 to 45 seconds before Williams' car drove off. The officer did not recognize any of the individuals involved in the encounter. He followed the car and stopped it based on his observations.
Following an initial exchange with Williams, the officer asked if he could search the car, and Williams responded, "sure you can." As the officer leaned down to look into the interior, he observed two pieces of crack cocaine under the emergency brake. The officer advised Williams of his rights, and Williams admitted he purchased the cocaine at the apartment complex.
*406 Based on these facts, the trial court denied Williams' motion to suppress the cocaine. The trial court found that the officer had a well-founded suspicion to stop Williams and that Williams consented to the search. We disagree.
On appeal, we will not reverse a trial court's findings of fact where the findings are supported by competent, substantial evidence. See Hines v. State, 737 So.2d 1182 (Fla. 1st DCA 1999). However, we give de novo review to the trial court's application of the law to those facts. Id.
The initial question is whether the officer possessed the requisite well-founded suspicion to stop Williams. A temporary stop is permissible only if the officer has a well-founded suspicion that the individual detained has committed, is committing, or is about to commit a crime. See § 901.151, Fla. Stat. (1997); Curtis v. State, 748 So.2d 370, 372 (Fla. 4th DCA 2000). The founded suspicion necessary must be based upon the "totality of the circumstances as viewed by an experienced police officer." See Curtis, 748 So.2d at 372 (citing Saturnino-Boudet v. State, 682 So.2d 188, 191-92 (Fla. 3d DCA 1996)).
Although this court has been reluctant to approve a stop by an officer who has not actually seen either money or drugs exchange hands, we have identified other factors that a trial court should consider in assessing the reasonableness of an officer's suspicion. These include "the officer's narcotics experience; the reputation of the location for drive-up transactions; the extended period of surveillance; and the history of previous multiple arrests from that site." Burnette v. State, 658 So.2d 1170, 1171 (Fla. 2d DCA 1995). We note that even though we identified these factors in Burnette, we also identified the presence of two additional factors that further supported the finding of reasonable suspicion: a hand-to-hand transaction, and the officer's knowledge that the pedestrian involved was a known drug dealer.
Whether the Burnette factors alone, in the absence of a hand-to-hand exchange or the presence of a known drug dealer, will support a well-founded suspicion to stop is a question that we need not answer. The totality of the circumstances in this case, even when measured against the Burnette factors, does not support a finding of reasonable suspicion. This was not an organized surveillance and arrest operation. The officer, acting alone, stationed himself to observe a known drug location, but was one hundred yards away. He saw no drug deals that night before he stopped Williams. Although the officer knew that drug arrests had been made from this location, he saw no other encounters that night before he stopped Williams, and he made no drug arrests from that location before he stopped Williams. He did not testify to an organized, extended period of surveillance.
Given the undeveloped nature of the above facts, in addition to the absence of a hand-to-hand exchange, we conclude that the officer did not have a founded suspicion to stop Williams. "A founded suspicion is one which has some factual foundation in the circumstances observed by the officer when those circumstances are interpreted in light of the officer's knowledge." Smith v. State, 592 So.2d 1206, 1207 (Fla. 2d DCA 1992). Based on the totality of the circumstances here, the officer's suspicion was a mere hunch.
Although Williams did subsequently consent to the search of his vehicle, the illegal stop presumptively tainted the voluntariness of the consent unless the State could establish by clear and convincing evidence that there was an "unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given." Thomasset v. State, 761 So.2d 383 (Fla. 2d DCA 2000). There was no such break in the chain of illegality here. The officer obtained Williams' consent to search shortly after he stopped the vehicle. Williams' subsequent *407 consent was, therefore, not voluntary, and failed to validate the search.
Because the initial stop lacked a founded suspicion of criminal activity and the illegal stop tainted Williams' subsequent consent to search, we conclude that the cocaine discovered as the result of the illegal stop should be suppressed. Accordingly, we reverse.
ALTENBERND, A.C.J., and NORTHCUTT, J., Concur.