Samuel James JEFFERSON *v.* STATE of Arkansas

CA CR 01-267 64 S.W.3d 791

Court of Appeals of Arkansas
Division II
Opinion delivered January 9, 2002

*William R. Simpson, Jr.*, Public Defender; *Kent C. Krause* and *Ashley Riffel*, Deputy Public Defenders, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Samuel Jefferson appeals from his conviction for possession of cocaine. He argues that the trial judge erred in denying his motion to suppress because his stop and detention were not based upon reasonable suspicion and because the seizure of the evidence was impermissibly tainted by his subsequent illegal detention. We agree. Therefore, we reverse and remand for a new trial.

In the early morning hours of August 19, 1999, appellant was stopped by officers of the Little Rock Police Department as he walked through Vorhees Trailer Park in Little Rock. The officers stopped appellant in an attempt to ascertain his identity. As appellant approached the officers, he dropped a small package, which the officers retrieved. Subsequent chemical analysis of the package confirmed that the package contained 2.138 grams of cocaine. Appellant was charged with possession of cocaine with intent to deliver.

Appellant filed a motion to suppress the evidence seized in the search. Citing *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998), he alleged that the initial encounter was impermissible under Arkansas Rule of Criminal Procedure 2.2, in that the information requested was not being sought in the investigation or prevention of a crime. Appellant also asserted that the officers had no reasonable or articulable suspicion that he was armed and dangerous, or had committed or was about to commit a felony or a misdemeanor as described in Rule 3.1.

The testimony at trial established that Officer Charles Allen and Officer Charles Johnson were conducting a routine patrol in Vorhees Trailer Park on August 19, in response to numerous complaints and arrests due to narcotic activity by residents and nonresidents in the area. The officers came into the trailer park with their lights off at around 2:30 a.m., and observed appellant walking through the trailer park. When appellant walked in front of the police car, Johnson turned on his headlights. Appellant appeared

startled when he saw the vehicle and changed the direction in which he was walking. The officers stopped, and Allen stepped out of the vehicle and asked appellant to approach so that they could determine whether he was a resident of the trailer park. Initially, appellant did not approach the car. Johnson testified that appellant hesitated and attempted to "evade" the officers.

Allen again called to appellant, who then approached the police car. As appellant approached Allen's side of the car, he had his hand in his right pocket. Allen testified that appellant acted as if he were going to turn away. Allen again commanded appellant to approach the vehicle and drew his weapon. Allen saw appellant throw something to the ground as appellant moved toward the vehicle. The officers ascertained appellant's identity and searched the immediate area. Allen retrieved the item that appellant had thrown, which was a pill bottle containing ten to fifteen pieces of an off-white rock-like substance.

After the officers' testimony, appellant's counsel moved to suppress the evidence of the pill bottle and its contents. The trial court found that appellant had not been actually detained until after the officer observed him throw something from his hands and that he was not searched in order to lead to the evidence that was introduced against him. It further noted that if appellant had discarded something, the officers had a right to pick it up. The court found that given the time of the day, the officers' knowledge regarding the known drug activity at that location, and the fact that appellant was coming from between two trailers (as opposed to being on a public street) gave the officers authority to stop him and determine the reason for his presence to prevent crimes. The trial court denied appellant's motion to suppress. After a jury trial, appellant was found guilty of the lesser-included offense of possession of cocaine and received a five-year prison sentence. He appeals solely from the denial of his motion to suppress.

■ ■ In reviewing a trial court's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances. *See Hale v. State*, 61 Ark. App. 105, 968 S.W.2d 627 (1998). Where the trial court denied a defendant's motion to suppress, we will reverse only if, in viewing the evidence in the light most favorable to the nonmoving party, the trial court's ruling is clearly against the preponderance of the evidence. *See id.*

## I. Whether the Initial Stop was Proper

Appellant argues that the trial court erred in denying his motion to suppress because at the time of the stop, the officers lacked reasonable suspicion that he had committed or was about to commit any criminal offenses and because the officers were not investigating a particular crime. He maintains that his behavior did not give the officers reasonable suspicion to make the initial stop and, therefore, the subsequent search was illegal. Specifically, he argues that the fact that he was outside at 2:30 a.m. in a high-crime area did not give the officers ground for reasonable suspicion, nor did the fact that he initially hesitated before complying with the order to approach the vehicle. He asserts that pursuant to *Illinois v. Wardlow*, 528 U.S. 119 (2000), citizens have the right to ignore police who approach them without probable cause or reasonable suspicion and may go about their business with no response. Appellant also argues that although he changed his direction of travel, he did not engage in unprovoked flight as did the defendant in *Wardlow*, and he was merely ignoring the police, as he is permitted to do. Finally, he maintains that a person's mere refusal to cooperate does not justify detention or seizure. *See Florida v. Bostick*, 501 U.S. 429 (1991).

We agree that nothing about appellant's behavior prior to the stop gave the officers reasonable suspicion that would justify a stop under Rule 3.1 or Rule 2.2. Rule 3.1 provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

 Rule 2.1 defines reasonable suspicion as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but

which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Factors that support a reasonable finding of reasonable suspicion include: a person's conduct and demeanor, his gait and manner, the time of day or night the suspect is observed, the location involved, the incidence of crime in the immediate neighborhood, a person's apparent effort to conceal an article, and a person's effort to avoid identification or confrontation by the police. *See* Ark. Code Ann. § 16-81-203 (1987). Although an officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime, this encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. *See Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998).

Rule 2.2 provides that a law enforcement officer may request any person to furnish information or to otherwise cooperate in the investigation or the prevention of a crime. *The officer may request, but may not require the person to respond to such requests.* Appellant also argues that the search was not justified under Rule 2.2 because there was no evidence that the officers were investigating a particular crime. Although the area was a known high drug-traffic area, the officers did not testify that they had reports of any drug activity that evening. Nor was there any evidence that he was hiding or acting furtively, that he fled, that he was wearing bulging clothing that might conceal contraband, or that he was known to the officers as a prior offender. He argues that even in a high-crime area, unless a person is doing something indicative of criminal activity, the police may not approach that person, even under the guise of ascertaining his identity.

Appellant maintains that the application of these rules in *Stewart v. State*, 332 Ark. 138, 864 S.W.2d 793 (1998), and *Jennings v. State*, 69 Ark. App. 50, 10 S.W.3d 105 (2000), compels reversal in this case. We agree. In those cases, the Arkansas Supreme Court reversed on similar facts. In *Stewart*, the police officer was patrolling a known drug area at 1:45 a.m. He spotted the defendant standing on the corner outside of her home. Based upon the late hour, the place where she was standing, and the fact that he had made several prior arrests in that area, the officer suspected the defendant might be engaged in drug trafficking. He pulled his vehicle up to where the defendant was standing and asked what she was doing. She stated that she was about to go for a walk, and placed her right hand inside her coat pocket two or three times despite the officer's

request for her to keep her hands outside of her coat. *See Stewart v. State, supra.* Believing that the defendant had a weapon in her coat, the officer performed a pat-down search and felt a large bulge in her right coat pocket. The officer reached into the pocket and retrieved thirty-five one dollar bills, a one-hundred dollar bill, and a matchbox. The officer then opened the matchbox and found two rocks of crack cocaine. *See Stewart v. State, supra.*

The *Stewart* court reversed, finding that the officer's only justification for the stop was that the defendant was in the wrong place at the wrong time, because there was nothing about the defendant's actions or demeanor to indicate that she was involved in any illegal activity. Further, the court found that the defendant's conduct in placing her hand in her pockets did not occur until after the officer asked her to approach the car and therefore, could not be used as a justification for the stop. *See Stewart v. State, supra.* Therefore, the *Stewart* court held that the stop was unreasonable under Rule 2.2. The court further found that the stop was not justified under Rule 2.2 because an encounter under that rule is permissible only if the information or cooperation sought is in aid of an investigation or the prevention of a particular crime. *See Stewart v. State, supra; See also Hammons v. State,* 327 Ark. 520, 940 S.W.2d 424 (1997). The *Stewart* court stated that the officer was not investigating a nearby crime nor was he acting on a tip from an informant at the time of the encounter. Therefore, the court concluded that the encounter was not permissible under Rule 2.2. *See Stewart v. State, supra.*

In *Jennings v. State, supra,* our court reversed the denial of a motion to suppress on similar grounds. In *Jennings,* an officer spotted the defendant and a person known to the officer to be a high school student at the corner of an intersection in an area known for its drug trafficking. Because the area was a known drug area, a sign was posted on the corner forbidding standing or parking. *See Jennings v. State, supra.* The officer asked the men what they were doing and they responded they were waiting for a bus. There were several bus stops along that route, but none at that particular intersection. The officer did not know the defendant and requested his identification. She asked the men to move out of the roadway, and spotted what appeared to be a brown paper bag containing an alcohol flask in the minor student's pocket. *See Jennings v. State, supra.* She confiscated the bottle and conducted a pat-down search for her safety. The officer asked both men if they had any weapons. They each responded, "No." The officer found a small handgun at the defendant's waistline. A subsequent search of the defendant revealed two small plastic bags containing cocaine.

The officer in *Jennings* stated that she initially stopped appellant and the student because she recognized the student because there was a sign prohibiting loitering, because the area was a known drug area, and she intended to "check them out" to see if they were doing anything wrong. *See Jennings v. State, supra.* The *Jennings* court, citing *Stewart v. State, supra,* held that the stop was improper under Rule 3.1 because the defendant was merely in the wrong place at the wrong time. The *Jennings* court found that there was no indication that the defendant was committing or was about to commit a crime, and that the only factor present from section 16-81-203 was the fact that appellant was in a known drug area. As in *Stewart,* the *Jennings* court also found that the stop was improper under Rule 2.2 because there was no testimony that the officer was investigating or preventing a crime when she encountered the defendant. *See Jennings v. State, supra.*

■ The State agrees that the time of night and appellant's presence in a high-crime area might not be sufficient to support a finding of reasonable suspicion. However, the State maintains that it showed factors in addition to appellant's presence in a high crime area at 2:30 in the morning that, under the totality of the circumstances, gave rise to more than a bare suspicion. It is true that the location as a high-crime area and defendant's nervous and evasive behavior are proper considerations when determining reasonable suspicion. *See Illinois v. Wardlow, supra; United States v. Sokolow,* 490 U.S. 1 (1989).

■ ■ However, it is only the totality of the circumstances *preceding* the stop that this court may consider. Pursuant to *Stewart* and *Jennings,* and Rules 3.1 and 2.2, we hold the stop was impermissible because nothing about appellant's behavior prior to the stop provided the officer with reasonable suspicion to believe that appellant had committed or was about to commit a crime as described in Rule 3.1. The fact that appellant was out late walking in a high-crime area did not give the officers a sufficient reason to stop him. *See Stewart v. State, supra.* Nor did the fact that appellant appeared startled and turned away when the officer turned his headlights on after appellant stepped in front of the car, as any person would likely do. Further, appellant was not required to obey the officer's demand that he approach the officer's vehicle. *See Illinois v. Wardlow, supra.* Therefore, appellant's initial reluctance to cooperate did not provide the officer with reasonable suspicion. *See Florida v. Botsick, supra.* Even though separate innocent acts, taken together, may give rise to reasonable suspicion, here, appellant merely appeared startled when the officer turned on his headlights,

changed his direction of travel, then stopped and shortly thereafter complied with the officer's demand. Even viewed collectively and in the light most favorable to the State, appellant's conduct does not support a finding of reasonable cause to detain him.

Moreover, the trial court erred in finding that appellant was not detained until after he discarded the pill bottle. Appellant was "seized" within the meaning of the Fourth Amendment when Johnson turned on his headlights and Allen ordered him to approach the car because the use of headlights coupled with the demand to approach would indicate to a reasonable person that he was not free to leave. *See Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997) (holding that the defendant parked in a parking lot was seized for Fourth Amendment purposes, when police turned on the blue light on his vehicle, because the use of the light was display of authority that would indicate to reasonable person that he was not free to leave). Appellant's only conduct prior to the stop was walking in the trailer park, a known high-crime area, at 2:30 a.m. Certainly, this behavior alone would not give rise to reasonable suspicion under Rule 3.1. He thereafter removed the pill bottle from his pants and threw it down. Therefore, because he threw away the pill bottle after the stop, the State cannot use that conduct to justify the stop. *See Stewart v. State, supra.*

Nor is the stop justified under Rule 2.2, because there was no evidence that the officers were investigating a particular crime. As in *Stewart* and *Jennings*, there was no evidence presented that they were acting on a tip from an informant or investigating or seeking to prevent a particular crime. To the contrary, both officers testified that they were on routine patrol because the area was known for narcotics trafficking. To suggest that the stop was proper under this rule because the officers were merely seeking to ascertain appellant's identity ignores the fact that the officers were not authorized to do so unless they were investigating a particular crime. *See Hammons v. State, supra; Meadows v. State*, 269 Ark. 380, 602 S.W.2d 636 (1980). Based on the foregoing authorities, we hold that the initial stop of appellant was improper.

## II. Whether Appellant Abandoned the Pill Bottle

However, the State argues that even if the officers' conduct in stopping appellant was unreasonable, the evidence should not be

suppressed because it was discovered as a result of appellant's independent calculated act. Appellant maintains that just as a confession obtained during an illegal detention is tainted, so is the seizure of contraband thrown down during an illegal detention. He also argues that property is not considered "abandoned" when a person discards it due to the unlawful activities of police officers.

This appears to be an issue of first impression in Arkansas. Generally, under Arkansas law, where an initial stop is improper, any subsequent search is improper and any evidence found in the course of an illegal search is inadmissible. *See Jennings v. State, supra.* However, the seizure of abandoned property without a search warrant is permissible because a person has no legitimate expectation of privacy in the area searched or the items seized when he has abandoned an item. *See, e.g., Rockett v. State,* 318 Ark. 831, 980 S.W.2d 235 (1994) *overruled on other grounds by MacKintrush v. State,*33 Ark. 390, 978 S.W.2d 293 (1998); *Edwards v. State,* 300 Ark. 4, 775 S.W.2d 900 (1989). Because there is no expectation of privacy in abandoned property, one may not assert Fourth Amendment protections to abandoned property. *See Edwards v. State, supra; Bernal v. State,* 48 Ark. App. 175, 892 S.W.2d 537 (1995).

The State counters that we should inquire into appellant's motive for discarding the pill bottle and the intent of the officers in engaging appellant, rather than automatically excluding the evidence. *See, e.g., People v. Boodle,* 391 N.E.2d 1329 (1979). The State also maintains that appellant's abandonment of the pill bottle was an independent act involving a calculated risk, and was not the fruit of an unlawful search or seizure. Finally, the State argues that the officers' actions did not demonstrate a purposefulness to discover contraband because the purpose of the initial contact was to ascertain appellant's identity and to determine the lawfulness of his presence, because of the complaints that nonresidents were trafficking in illegal drugs.

Abandonment is a question of whether the person has voluntarily discarded or otherwise relinquished his interest in property so that he no longer retains a reasonable expectation of privacy in the property as of the time of the search. *See Kirk v. State,* 38 Ark. App. 159, 832 S.W.2d 271 (1992). Thus, abandonment is a question of intent. *See id.* If the defendant has abandoned his property, then he has no right to assert Fourth Amendment protections. In determining whether property has been abandoned, our courts have primarily examined whether the defendant had been seized when the property was abandoned, *see, e.g., Rabun v. State,* 36 Ark. App.

237, 821 S.W.2d 62 (1991) or whether the defendant intended to abandon the property. *See, e.g., Wilson v. State*, 297 Ark. 568, 765 S.W.2d 1 (1989); *Kirk v. State, supra.* Therefore, the issue before us is whether we should adopt a bright-line rule that property discarded as a result of an illegal detention is not abandoned for Fourth Amendment purposes.

█ Instead of adopting such a rigid rule, we hold that the totality of the circumstances in this case demonstrate that appellant did not voluntarily discard the pill bottle so as to justify a finding of abandonment. He had already been illegally detained before he discarded the pill bottle, as previously mentioned. Furthermore, the record clearly shows that after appellant was illegally stopped, one officer drew a weapon on him. To deem appellant's action in discarding the pill bottle as being voluntary in the face of these facts is to ignore both the reality of his illegal detention and the coercive force of a pointed gun. To hold that appellant's conduct in discarding the pill bottle was abandonment would undermine the deterrent purpose of the Fourth Amendment to discourage police from engaging in unreasonable searches and seizures. A confession obtained following an illegal detention, at the point of a gun, and under glaring lights is involuntary. We view the discarded pill bottle in this case from the same perspective.

For the above reasons, we hold that the trial court erred in denying appellant's motion to suppress. Thus, we reverse and remand for a new trial.

Reversed and remanded.

STROUD, C.J., agrees.

PITTMAN, J., concurs.

JOHN MAUZY PITTMAN, Judge, concurring. I concur in the decision to reverse appellant's conviction and remand the case. I agree with the majority's conclusions that appellant was illegally seized before dropping the pill bottle and that the evidence was discovered as a result of that seizure, but I do not agree that appellant was seized at the point at which the majority states.

The majority states that appellant was seized when Officer Johnson turned on the headlights and Officer Allen ordered appellant to approach the police car. *Hammons v. State*, 327 Ark. 520, 940

S.W.2d 424 (1997), is cited for this proposition. However, subsequent to its decision in *Hammons*, our supreme court decided *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001). There, the court very clearly stated:

> Police pursuit of a suspect or their ordering the suspect to stop is generally not a seizure. *United States v. Thompkins*, 998 F.2d 629 (8th Cir. 1993). For a seizure to occur, there must be a physical application of force by the officer or submission to the officer's show of force. *Id.* A show of authority, without any application of physical force, to which the subject does not yield, is not a seizure. *California v. Hodari D.*, 499 U.S. 621 (1991). Based upon this record of an armed standoff between Mr. Smith and the police officers, we hold that Mr. Smith's freedom of action was not curtailed to a degree associated with formal arrest until he was shot in the arm by an officer and physically taken into police custody.

343 Ark. at 571, 39 S.W.3d at 751.

Based on *California v. Hodari D., supra*, and *Smith v. State, supra*, I cannot agree that appellant was seized upon the car's headlights being turned on, upon his being ordered to stop, or even upon the police officer's weapon being drawn. After these events, he continued to walk away. Rather, he clearly was not seized within the meaning of the Fourth Amendment until he submitted to the officers' show of authority. Nevertheless, the record of the suppression hearing makes it clear that appellant did not drop the evidence until after he had ceased to walk away from the officers, after he had displayed his hands, and after he had begun moving, without further deviation, toward the officers. These facts clearly demonstrate that appellant had submitted to the officers' show of force before he discarded the pill bottle, and I concur.