**Ricardo BLACK, Appellant**

v.

**UNITED STATES, Appellee.**

**No. 99–CM–1403.**

District of Columbia Court of Appeals.

Argued May 3, 2001.

Decided Nov. 14, 2002.

Larry D. Williams, appointed by the court, for appellant.

Steven B. Snyder, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time brief was filed, and John R. Fisher and Mary–Patrice Brown, Assistant United

States Attorneys, were on the brief for appellee.

Before STEADMAN, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

Ricardo Black, convicted of cocaine possession under D.C.Code § 48–904.01(d) (2001), formerly D.C.Code § 33–541(d) (1998 Repl.), alleges that the police had no reasonable basis to detain him for an investigative stop under the standard established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the trial court therefore erred in denying his motion to suppress evidence obtained during that stop. Finding no error, we affirm.

## FACTS

Police officers Clay and Willis were patrolling the alley behind the 400 block of H Street, N.E., an area with a high level of narcotics activity,[1] in a marked police car during the early evening of December 3, 1998. As the officers approached 4th Street, they saw Black and another man standing close together at the mouth of the alley across the way. Black appeared to be showing his companion a small object cupped in his hand, while his companion held currency. Black's companion fled when he saw the police, and Black appeared to place an object in his jacket pocket. The officers crossed the street and used their police cruiser to block Black's access to his bicycle, preventing his egress. When officers questioned Black about the contents of his pocket, he showed them two Ziploc bags of cocaine, which, he explained, he had purchased from the man who fled.

[1.] According to Officer Clay, who testified at the suppression hearing, he had made "plenty" of drug arrests in that "particular area" of H Street, N.E., and the city had recently installed high-intensity lights in the area, at least, in part, at the behest of the Metropolitan Police Department.

## ANALYSIS

■ The question of whether police had a reasonable, articulable suspicion sufficient to justify an investigatory stop is one of law, *see Brown v. United States,* 590 A.2d 1008, 1020 (D.C.1991), which we review *de novo,* giving due deference to the trial court's findings of fact. *See Maddox v. United States,* 745 A.2d 284, 289 (D.C. 2000).

■ "The central inquiry in every *Terry* stop controversy is whether, given the totality of the circumstances at the time of the seizure, the police officer could reasonably believe that criminal activity was afoot." *Duhart v. United States,* 589 A.2d 895, 897 (D.C.1991). That suspicion must be " 'particularized' as to the individual stopped," *see United States v. Turner,* 699 A.2d 1125, 1128 (D.C.1997), although "a combination of independently innocent behaviors and circumstances, both general and specific, can create reasonable suspicion in certain cases." *United States v. Woodrum,* 202 F.3d 1, 7 (1st Cir.2000).

The government relies on three factors to justify this stop:[2] (1) the display of a concealed object by Black to a companion, who held currency in his hand; (2) the flight of the companion upon approach of the police; and (3) the location of the observed transaction in an area known for illegal narcotics transactions.

■ We begin with the first factor, an apparent exchange interrupted by the arrival of the police. This court has, on many occasions, evaluated the import of an exchange of money or objects between individuals in the context of an investigative stop. Generally, we have concluded that a "one-way exchange"—the passing of an object or money from one individual to another—is insufficient to justify a stop, whereas a "two-way exchange" is often "decisive" in establishing reasonable suspicion. *Compare In re T.T.C.,* 583 A.2d 986, 990 (D.C.1990) (holding that passing a small white object in a high crime area, without further evidence of an exchange, is insufficient to support a *Terry* stop) *and Gray v. United States,* 292 A.2d 153, 156 (D.C.1972) (holding that "the mere passing of money on a street, which the arresting officers characterized as a 'high narcotics area,' " does not give reasonable grounds to conclude that a narcotics transaction is taking place) *with Thompson v. United States,* 745 A.2d 308, 313 (D.C.2000) (holding that the exchange of currency for an object, along with other factors indicating drug activity, formed the basis for an articulable suspicion). *But cf. Reyes v. United States,* 758 A.2d 35, 38 (D.C.2000) (holding that a surreptitious one-way exchange in an "open air drug market" was sufficient to justify an investigatory stop); *United States v. Bennett,* 514 A.2d 414, 416 (D.C. 1986) (holding that a one-way transfer of money, coupled with the defendant's flight and telltale signs of a drug transaction, is sufficient to create an articulable suspicion). We have reasoned that one-way exchanges have relatively little probative value because they are capable of "innumerable innocent explanations," *see Duhart,* 589 A.2d at 899, while two-way exchanges are less susceptible of multiple meanings, and at least establish a reasonable inference of a sale. *See, e.g., Thompson,* 745 A.2d at 313.

In our view the evidence presented here—an imminent transaction interrupted by the arrival of police[3]—is conceptually

---

2. The issue whether this was a seizure under the Fourth Amendment is not before us.

3. A police officer appeared to interrupt a drug transaction in *Marbury v. United States,* 540 A.2d 114 (D.C.1985), but the court never reached the question of whether reasonable

similar to a two-way exchange. Independent, yet complementary and simultaneous actions by two parties in apparent preparation for a sale give rise to the same inference as an actual exchange: the presence of a sale or related transaction. This evidence, in the context of indicia that the sale was of an illegal nature, may provide police with a reasonable basis to stop a suspect and investigate further. *See, e.g., United States v. Espinosa,* 827 F.2d 604, 606, 608–09 (9th Cir.1987) (holding that evidence of an interrupted exchange in an area known for drug trafficking was enough to support an investigatory stop).

 The second ground supporting a stop cited by the government is the flight of Black's companion. The flight of one person from authority may imply the guilt of another if circumstances indicate that the two were engaged in a joint venture, *see United States v. Johnson,* 496 A.2d 592, 597 (D.C.1985), such as a street sale, *see, e.g., United States v. McCarthy,* 448 A.2d 267, 270 (D.C.1982) (holding that flight of companion may help justify a *Terry* stop in the context of other circumstances); *Smith v. United States,* 295 A.2d 64, 67 (D.C.1972) (same). The companion's flight, which would ordinarily be relevant to an inference of consciousness of guilt on the part of that person, thus also casts suspicion on Black.

 The third ground cited by the government, the character of the area where Black was stopped, though insufficient by itself, lends further support for Black's detention in this case. Although this court has often characterized the phrase "high drug trafficking area" as a "familiar talismanic litany" that is incapable, without a great deal more, of supporting an inference of criminal conduct, *see Smith v. United States,* 558 A.2d 312, 316 (D.C. suspicion to support an investigatory stop ex-

1989) (en banc), that "litany," in this case, carries greater weight than is typical because there is factual support in the record of localized criminal activity: high-intensity lights had been installed near the alley, at least, in part, in response to observed criminal activity. Black's actions must therefore be placed in the context of that activity, lending further support to a reasonable suspicion on the part of the officers.

In light of the totality of the circumstances, we therefore hold that the police had reasonable articulable suspicion that justified stopping Black. His involvement in an apparent street sale in an area known for trade in narcotics, coupled with his companion's flight upon the officers' approach, was sufficient to create a reasonable suspicion that a crime was occurring. The judgment of the trial court is therefore

*Affirmed.*